MICHIGAN UNITED CONSERVATION CLUBS, Thomas L. Washington, Carl Johnson, Fred Bear, Thomas Anderson, and Ben East, Plaintiffs-Appellants,

v.

CBS NEWS, A DIVISION OF CBS, INC., Defendant-Appellee.

No. 80–1231.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 20, 1981.

Decided Nov. 30, 1981.

fied that he cooperated fully from the beginning. *Grieco, supra*, at 1034.

Neil A. McLean, Glassen, Rhead, McLean, & Campbell, Lansing, Mich., for plaintiffs-appellants.

George E. Brand, Jr., Butzel, Long, Gust, Klein, & Van Zile, Detroit, Mich., F. William Hutchinson, Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., for defendant-appellee.

Before MERRITT and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Michigan United Conservation Clubs, plaintiff below, appeals an order granting summary judgment for CBS News, defendant below. M.U.C.C. is a non-profit Michigan corporation which promotes natural resource conservation and environmental protection. Its membership consists primarily of game hunters. M.U.C.C. brought this action against CBS News, alleging that two documentary films, "The Guns of Autumn" and its sequel "Echoes of the Guns of Autumn", defamed M.U.C.C. and all Michigan hunters. These films examine sports game hunting with a critical eye. CBS broadcast them on national television on September 5 and 28, 1975, respectively.

In substance, M.U.C.C. alleged that CBS "tricked" M.U.C.C.'s executive director, Thomas L. Washington, into cooperating with the CBS film crews by promising that the documentary would treat hunting favorably, when in fact it treated hunting unfavorably. In particular, M.U.C.C. objected to CBS's secret collaboration with Cleveland Armory, and to its filming of a bear hunt at a garbage dump. M.U.C.C. claimed that CBS gave the public a negative false impression of American hunters by emphasizing the slaughter rather than the "spirit of the hunt."

Thomas L. Washington, an individual plaintiff, alleged that CBS used a soundtrack of his voice extolling the virtues of the hunt, as background commentary for a scene showing Colorado hunters loading dead deer onto a truck. Washington claimed that this juxtaposition showed him "in a light that was contrary to the thoughts [he] expressed." He allegedly suffered personal humiliation and discredit "as

a result of the *deceit* used by CBS *to induce him* to participate in a film that discredited hunting." (emphasis added).

The District Court, 485 F.Supp. 893, granted summary judgment against all plaintiffs after viewing the films and concluding as a matter of law that they were not "of and concerning" plaintiffs. M.U.C.C. and the individual plaintiffs now appeal, contending that the question whether the films were "of and concerning" them, is a question of fact, precluding summary judgment.

■ We disagree. First, we discuss the claims of the individual hunters, who essentially claimed they were defamed as members of the large group of Michigan sports hunters which numbers more than one million. This is essentially a claim of group libel. Under Michigan law "it is not enough for a complainant to allege that he is a member of a group allegedly defamed." *Chapman v. Romney*, 6 Mich.App. 36, 40, 148 N.W.2d 230 (1967). In *Chapman* the court affirmed entry of summary judgment in favor of defendant, in an action brought by a member of the John Birch Society, stating:

> Where a defamatory publication affects a class of persons without any special personal application, no individual of that class can maintain an action for the publication; and it has been held that, where defamatory statements are made against an aggregate body of persons, an individual member not specifically imputed [sic] or designated cannot maintain an action.

*Id.* at 39, 148 N.W.2d 230 (quotation omitted). The individual plaintiffs did not allege that they were shown, described, named, identified or in any way mentioned in either of the films. They made no showing that the films related to them in any personal individual capacity. Plaintiffs belong to an enormous group that was allegedly defamed. Under these circumstances, summary judgment was proper for the simple reason that the individual plaintiffs failed to establish a prima facie case that the films concerned them personally. Vague, general references to a compara-

tively large group do not constitute actionable defamation. *Schuster v. U. S. News & World Report, Inc.*, 602 F.2d 850 (8th Cir. 1979).

■ Next, we reject M.U.C.C.'s claim that as an organization it was defamed by the films. From our review of the record we find no indication that the films explicitly or implicitly referred to M.U.C.C., by identifying individual hunters as M.U.C.C. members. Nor was M.U.C.C. in any way identified or implicated as a proponent of the questionable hunting practices depicted. Because M.U.C.C. was not mentioned in the films, the District Court correctly decided as a matter of law that the films were not "of and concerning" the organization.

■ Finally, we agree with the District Court that use of an unattributed tape of Washington's voice as background for a scene of Colorado hunters handling deer carcasses, was not defamatory as a matter of law. The court correctly decided that Washington's statement was "nothing more than his belief that the sport hunter is not as cruel to animals as nature itself it." Washington did not allege that CBS misrepresented his views or that CBS presented them out of context. Under these circumstances, this segment of the film was incapable of conveying or supporting the innuendo that Washington suggests. Summary judgment was therefore properly entered in favor of CBS on this issue.

We find no merit in M.U.C.C.'s other contentions. Accordingly, we affirm the judgment of the District Court.