JAMES A. PIERSALL, Plaintiff-Appellant, v. SPORTSVISION OF CHICAGO et al., Defendants-Appellees.

First District (1st Division)   No. 1—90—1963

Opinion filed May 26, 1992.

Law Offices of Joseph V. Roddy, of Chicago (Joseph V. Roddy, of counsel), for appellant.

Katten, Muchin & Zavis, of Chicago (Donald E. Egan, Kirk T. Hartley, and Carole J. Ryczek, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, James Piersall (Piersall), appeals from an order of the circuit court of Cook County granting summary judgment in favor of defendants Jerry Reinsdorf (Reinsdorf) and Edward Einhorn (Einhorn) as to counts I, II, and IV of his amended complaint.[1] Counts I and II alleged that Reinsdorf and Einhorn tortiously interfered with Piersall's business relationship and contract with WMAQ radio, and count IV alleged that Reinsdorf libeled Piersall by calling him a liar.[2] On appeal, plaintiff contends that: (1) he sufficiently alleged a cause of

---

[1] Piersall brought this action in 1984 against SportsVision of Chicago, Reinsdorf and Einhorn as its principals, and National Broadcasting Company (NBC), d/b/a WMAQ, for wrongful discharge, and against Einhorn and Reinsdorf for defamation. The trial court dismissed the wrongful discharge claims against NBC/WMAQ and SportsVision, and dismissed an earlier defamation claim against Reinsdorf. Piersall does not appeal from these orders of dismissal.

[2] At oral argument, plaintiff waived any relief against Einhorn on any count, having failed to argue any issues against him.

action against Reinsdorf for defamation in count IV of his amended complaint, and (2) that counts I and II are sufficient to show that Reinsdorf engaged in tortious interference of contract. Reinsdorf cross-appeals, alleging that the trial court erred in permitting the continued prosecution of this action in light of Piersall's alleged unverified answers to interrogatories. For the following reasons, we affirm the judgment of the trial court.

The record discloses the following relevant facts. Piersall is a former All-Star major league baseball outfielder. In 1981, Reinsdorf and Einhorn, owners of the Chicago White Sox baseball team, hired Piersall for the 1981 and 1982 baseball seasons as a broadcast commentator on "SportsVision," a cable television program that they owned and operated. During that time, Piersall was also employed by NBC-owned radio station WMAQ as an announcer and talk show host. On April 5, 1983, following the first White Sox game of the season, Einhorn and Reinsdorf discharged Piersall as a SportsVision broadcaster.

On September 19, 1983, in the course of interviews after the game in which the White Sox clinched the 1983 American League Western Division title, reporters asked Reinsdorf about Piersall and Harry Caray, another former White Sox announcer. In response to questions posed by reporters, Reinsdorf was quoted as making the following statements about Piersall and Caray:

> "I don't mind criticism, but they both told a lot of lies. They wanted us to lose. They thought they were bigger than the club and did not want the attraction shifting to the field." (Chicago Sun-Times, September 19, 1983.)

And:

> "The public could not know the truth about them; they are both liars. They both said things on the air they knew were not true." Chicago Tribune, September 19, 1983.

On the following day, September 20, 1983, during a radio interview on the Wally Phillips Show, Reinsdorf stated:

> "But I also think people would not have listened to these two people if they had realized what kind of character they actually had and I just felt that I wanted to go public because I don't mind criticism but what I have never been able to understand [is] lying and they just lied."

The above remarks are the subject of the alleged libel in count IV of Piersall's amended complaint.

On November 2, 1983, Piersall was discharged from his WMAQ talk show host position. In counts I and II, Piersall contends that

Reinsdorf conspired to interfere with his business relationship with WMAQ and coerced WMAQ's management into terminating his employment contract.

Defendants presented a motion for summary judgment on counts I, II, and IV, and submitted a number of affidavits and depositions in support thereof. The trial court granted defendants' motion, concluding that there were no facts that would support a finding of actual malice on the defamation count and that there was no evidence of tortious interference. This timely appeal followed.

Piersall contends that the trial court erred when it granted summary judgment as to the defamation action contained in count IV of the amended complaint. Piersall concedes that he is a public figure, and argues that he has proved that Reinsdorf's statements were made with "actual malice" as required by *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, and extended to public figures in *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975.

■ To establish actual malice, a defamation plaintiff must show that (1) the utterance was false and (2) that it was made with knowledge of its falsity or in reckless disregard of whether it was false or true. (*New York Times*, 376 U.S. at 279-80, 11 L. Ed. 2d at 706, 84 S. Ct. at 726.) "Reckless disregard" has been defined as proceeding to publish the defamatory matter despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth. *St. Amant v. Thompson* (1968), 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323; *Mittleman v. Witous* (1989), 135 Ill. 2d 220, 552 N.E.2d 973.

■ The burden of proving malice is on the party claiming injury. (*Vantassell-Matin v. Nelson* (N.D. Ill. 1990), 741 F. Supp. 698, 706.) This burden is not satisfied by the bare allegation that a defendant acted maliciously and with knowledge of the falsity of the statement; the plaintiff must allege facts from which actual malice may be inferred. *Vantassell*, 741 F. Supp. at 706 (citing *American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 632, 435 N.E.2d 1297).

■ At the summary judgment stage, a judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. (*Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 250, 91 L. Ed. 2d 202, 212-13, 106 S. Ct. 2505, 2511.) When a motion for summary judgment is made by a defendant in a defamation case, the plaintiff must set forth by "clear and convincing" evidence that there is a genuine issue of material fact as to whether the defendant made an alleged defama-

tory statement with actual malice. (*Anderson*, 477 U.S. at 252, 91 L. Ed. 2d at 214, 106 S. Ct. at 2512; *Reed v. Northwestern Publishing Co.* (1988), 124 Ill. 2d 495, 512, 530 N.E.2d 474, 482.) Summary judgment may be granted in favor of the defendant where the plaintiff has failed to raise a triable issue of fact by presenting clear and convincing evidence that the defendant made his allegedly libelous statements with actual malice. (*Anderson*, 477 U.S. at 255, 91 L. Ed. 2d at 216, 106 S. Ct. at 2514.) The party opposing summary judgment cannot rely upon his complaint or answer alone to raise a genuine issue of material fact. *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457.

Reinsdorf argues that the granting of summary judgment was proper because there was no genuine issue of material fact over whether he made his statements with actual malice. In his amended complaint, Piersall alleged that Reinsdorf "falsely and maliciously, with the intent to injure and destroy Piersall's good name *** made certain false and defamatory remarks." Reinsdorf supported his motion for summary judgment with his own sworn affidavit wherein he delineated a number of statements made by Piersall that Reinsdorf knew were not true, and that Reinsdorf had in mind at the time that he made the statements that Piersall was a liar.

In his response to the motion for summary judgment, Piersall relied upon the allegations of his amended complaint supported by his own affidavit. Therein, Piersall admitted to making a number of the statements, knowing them to be untrue, but insisting in some instances that the statements were made in jest.

For example, Reinsdorf states in his affidavit that in 1981, in the course of a television interview, Piersall said that the wives of the baseball players did not understand the game of baseball and were merely "horny broads *** who say yes very easily." Reinsdorf testified that he had met and knew the wives of various baseball players and thought that Piersall's statement was false. Piersall responds that this statement was "a quick pop goofy answer" to an interview question and admits that the White Sox suspended him for making the remark.

Reinsdorf testifies to various statements by Piersall regarding Tony LaRussa, the White Sox' manager, that he knew to be untrue. After the "horny broads" statement, Piersall made a statement to the effect that LaRussa threatened Reinsdorf that he would not bring the White Sox players onto the field if Piersall was in the broadcasting booth. Reinsdorf knew that LaRussa had not made that threat to Piersall. Piersall admits that he made the statement about LaRussa

based upon information he received from a young White Sox intern, whom he did not know by name, and that he had no other indication that the players were being kept off the field. Piersall also admits that the players were *not kept off* the field.

On September 10, 1981, Reinsdorf saw a newspaper article which quoted Piersall as saying on a television broadcast, "I have never ripped Tony LaRussa on the air." Reinsdorf stated that he heard Piersall criticize LaRussa on the air too many times to count in broadcasts prior to September 10, 1981. Piersall admits that he did criticize LaRussa during broadcasts prior to September 10, 1981.

Reinsdorf further testifies that Piersall made an untrue statement regarding an altercation he had had with sportswriter Bob Gallas in 1980. On Piersall's call-in radio program on May 22, 1983, Piersall denied choking Gallas, insisting instead that he held Gallas for only three seconds. Reinsdorf relied, however, on newspaper reports and eyewitness accounts of the altercation, wherein it was described that Piersall choked Gallas and had to be pulled off of him by Art Kusnyer, a White Sox coach. On the basis of these accounts, and knowing that Kusnyer was the strongest man in the clubhouse, Reinsdorf believed that Piersall lied when he gave his own account of the Gallas incident on the radio program. Piersall did not recall the 1983 radio program, but states that this is one example of an instance where Reinsdorf failed to investigate the truth of the situation by asking him personally what had occurred instead of relying on newspaper accounts.

In addition, Reinsdorf states, in February 1983, in response to a question about a recent White Sox trade, Piersall stated, "there is no one in the White Sox organization smart enough to hold a gun to anyone's head." Reinsdorf testified that he had personal knowledge that a number of people in the White Sox organization were intelligent enough to make a good trade. Piersall admitted to making the statement, stating that he did not believe the statement at the time he made it, and thought that he was "making a joke."

Reinsdorf also relies on Piersall's statement that "the writers for The Sun Times were a bunch of alcoholics." Piersall admits that he made the statement and that he was told that he could not "use the White Sox network to get back at somebody."

Piersall's argument that Reinsdorf's "failure to investigate" is evidence of malice is unpersuasive. In *Costello v. Capital Cities Communications, Inc.* (1988), 125 Ill. 2d 402, 532 N.E.2d 790, the Illinois Supreme Court held that "failure to investigate does not itself establish actual malice if the defendants did not seriously doubt the truth of [his] assertions." *Costello*, 125 Ill. 2d at 421.

■ In the present case, Piersall has presented no facts which clearly and convincingly show that Reinsdorf seriously doubted the truth of his statements. The record indicates that it is undisputed that Piersall made a number of untrue statements. Although the trial court was very generous in allowing Piersall to engage in discovery over eight years of litigation, Piersall has not submitted any evidentiary facts showing that Reinsdorf entertained serious doubts that Piersall did not tell the truth. Nothing in the record, even with the benefit of reasonable inferences, supports a finding of knowing falsity on Reinsdorf's part. Therefore, Piersall has not established a genuine issue of material fact as to whether Reinsdorf acted with actual malice.

Piersall similarly fails to show that Reinsdorf's various statements are actionable *per se* as unprotected expressions of opinion. Piersall argues that a statement that someone is a "liar" is libel *per se*. We agree with the trial court that the general statement that someone is a liar, not being put in context of specific facts, is merely opinion.

■ In libel actions, words are considered defamatory *per se* where they: (1) impute the commission of a criminal offense; (2) impute infection with a loathsome communicable disease; (3) impute inability to perform or want of integrity in the discharge of duties of office or employment; or (4) prejudice a party, or impute lack of ability in his trade, profession or business. *Mittleman*, 135 Ill. 2d at 238-39.

■ The distinction between fact and opinion is a matter of law. (*Brown & Williamson Tobacco Corp. v. Jacobson* (N.D. Ill. 1986), 644 F. Supp. 1240, 1256.) A written or oral statement is to be considered in factual context, with the words and the implications therefrom given their natural and obvious meaning. To determine whether a statement is fact or opinion, a court must evaluate the totality of the circumstances and should consider whether the statement is capable of objective verification as true or false. *Brown & Williamson*, 644 F. Supp. at 1256.

■ In reliance on *Fried v. Jacobson* (1983), 99 Ill. 2d 24, 457 N.E.2d 392, Piersall argues that the statement "Piersall is a liar" is libelous *per se* because the statement imputes to Piersall a want of integrity in the discharge of his business. (99 Ill. 2d at 26.) However, in *Fried*, the defendants made specific charges about the plaintiff with reference to specific facts that plaintiff alleged were not true.

Piersall's further reliance on *Milkovich v. Lorain Journal Co.* (1990), 497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695, is unavailing. There, a newspaper reporter wrote an article in which he implied that

Milkovich, a high school wrestling coach, lied under oath at a judicial proceeding about an incident involving Milkovich and his wrestling team. The Court held that the connotation that Milkovich committed perjury is sufficiently factual to be susceptible of being proved true or false, as the alleged defamatory language is an articulation of an objectively verifiable event. (*Milkovich*, 497 U.S. at 21-22, 111 L. Ed. 2d at 19-20, 110 S. Ct. at 2707.) The Court explained that summary judgment was improper because the truth or falsity of the statement could be answered by comparing the hearing testimony before the school board with the plaintiff's subsequent testimony before the trial court.

Piersall relies on *Milkovich* for *dicta* wherein the Court concludes that the sentence "Jones is a liar" may imply a false assertion of fact, even if those specific facts are either incorrect or incomplete, or if the speaker's assessment of them is erroneous. (*Milkovich*, 497 U.S. at 18-19, 111 L. Ed. 2d at 17-18, 110 S. Ct at 2705-06.) However, in the present case, there are no specific facts at the root of Reinsdorf's statement, complete or incomplete, capable of being objectively verified as true or false.

Similarly, in a recent case, this court found the statement "He lies a lot" to be libelous *per se* only because the statement was made in response to a statement made by the plaintiff about facts that the defendant knew not to be true. (*Pease v. International Union of Operating Engineers Local 150* (1991), 208 Ill. App. 3d 863, 567 N.E.2d 614.) There, a newspaper reporter interviewed Dugan, a representative of defendants' union, regarding a charge made by Pease that defendants engaged in acts of vandalism. In response to a reporter's question Dugan stated: "He lies a lot." The court held that statement was libel *per se* because it was made in a specific factual context.

Piersall does not cite any authority for his contention that without a factual basis surrounding a statement, a statement that a plaintiff is a "liar" can amount to libel *per se*. Therefore, the trial judge properly determined that Reinsdorf's statements were opinion and properly granted summary judgment in his favor.

█ Next, as alleged in counts I and II of his amended complaint, Piersall contends that defendants conspired to tortiously interfere with his business relationship with WMAQ and caused his contract cancellation. Piersall argues for the first time on appeal that the alleged defamatory statements made by Reinsdorf contributed to the cancellation of his contract and that these allegations are "tangential" to the defamation allegation. We note that issues not raised in the trial court are generally considered waived on appeal. *Fawcett v. Reinertsen* (1989), 131 Ill. 2d 380, 386, 546 N.E.2d 558, 560.

Notwithstanding such waiver, Piersall has failed to meet the standard of proof on summary judgment that a genuine material issue of fact remains to be resolved at trial. In determining whether a moving party is entitled to summary judgment, the court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent. (*In re Estate of Whittington* (1985), 107 Ill. 2d 169, 483 N.E.2d 210.) If facts are undisputed on motion for summary judgment, inferences may be drawn from such facts to determine if defendant is entitled to judgment as a matter of law. *Purdy Co. v. Transportation Insurance Co.* (1991), 209 Ill. App. 3d 519, 568 N.E.2d 318.

In their summary judgment motion, defendants attached numerous affidavits and depositions of WMAQ personnel stating that Reinsdorf had nothing to do with Piersall's termination. Piersall failed to present any evidence or affidavits to refute these facts. Thus, the trial court properly granted summary judgment on the tortious interference claims.

■ Finally, defendants contend on cross-appeal that the trial court should have dismissed this action earlier and not wasted their valuable legal resources because Piersall failed to file verified answers to interrogatories during discovery. This cross-appeal is inappropriate.

A party who has obtained by judgment all that was sought in the trial court cannot appeal that judgment. (*People ex. rel Village of Buffalo Grove v. Village of Long Grove* (1988), 173 Ill. App. 3d 946, 526 N.E.2d 670.) It is the judgment that gives rise to an appeal and not what else may have been said by the trial court. (*Buffalo Grove*, 173 Ill. App. 3d at 953, citing *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12.) Specific findings adverse to the appellee do not require a cross-appeal as long as the judgment was entirely in favor of the appellee. (*Buffalo Grove*, 173 Ill. App. 3d at 953.) In the present case, the trial court granted summary judgment entirely in defendants' favor. Thus, defendants' cross-appeal is dismissed.

For the reasons set forth above, the judgment of the trial court is affirmed and defendants' cross-appeal is dismissed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.