Robert A. BOESE, Plaintiff,

v.

**PARAMOUNT PICTURES CORPORATION, et al., Defendants.**

No. 93 C 5976.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 29, 1996.

Order Denying Reconsideration
and Clarification of Appeal
Dec. 18, 1996.

Alan Barinholtz, Barinholtz, Holzman & Gault, Chicago, IL, Mark H. Barinholtz, Chicago, IL, for Plaintiffs.

Richard B. Kapnick, James B. Speta, Sidley & Austin, Chicago, IL, Peter A. Tomaras, Kevin B. Reid, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Robert A. Boese ("Boese") brought this diversity action against Paramount Pictures Corporation ("Paramount"), Peter Brennan, Diane Dimond, and Virginia K. Weathers n/k/a Virginia K. Johnson for defamation per se, statutory defamation per se, and false light invasion of privacy. Before the court is defendants motion for summary judgment pursuant to Fed.R.Civ.P. 56 as to all counts. For the reasons set forth below, the court grants in part and denies in part.

### *Background*

This case arises out of a Hard Copy segment that aired nationally on October 7, 1992. The segment featured a story about Virginia Weathers' experience after a fire destroyed her home in Topeka, Kansas on November 12, 1986. Plaintiff, Robert A. Boese, a forensic chemist, on behalf of American Family Insurance, conducted a chemical analysis of debris from Weathers' house. Boese concluded that one sample of the debris showed that an accelerant was present at the fire site, and forwarded a report stating that finding to the insurance company.

As a result, the insurance company denied Weathers' claim.

On June 5, 1987, the State of Kansas filed two counts of aggravated arson against Weathers. At the preliminary hearing and the trial, Boese testified on the prosecution's behalf, relating his finding that an accelerant was present in the debris. In November 1987, the jury found Weathers not guilty of the arson charge.

On November 16, 1987, Weathers brought a civil action against American Family, B & W Consulting Forensic Chemists, Inc. ("B & W"), for which plaintiff was the president and sole shareholder, and others for alleged wrongs pertaining to the fire, the investigation, the denial of her claim, and the criminal prosecution. B & W was dismissed from the suit, but Ms. Weathers won an approximately $8 million judgment against American Family. (12(m) Stmt. ¶ 35; 12(n) Resp.Stmt. ¶ 35).

On October 7, 1992, a Hard Copy segment about Weathers' experience aired nationally, including locally, in the Chicago area. The segment starts out with the story of the fire and arson investigation. (12(n) Stmt. ¶ 9). The Hard Copy segment contains a voiceover description of Weathers' criminal trial wherein it is stated "everyone was against [Weathers] . . . the press, the town, and especially the powerful insurance company." The voiceover continues: "they brought in their big gun lawyers, their expert witnesses" at which point a sequence of videotaped scenes are interposed, including visuals of Weathers being sworn in, lawyers sitting at counsel's table, followed by Boese on the witness stand. (12(n) Stmt. ¶ 11). Then the report recounts the verdict in the criminal trial, the insurance company's continued refusal to pay her claim, and Weathers' civil suit against the insurance company and its outcome. The voiceover states that Ms. Weathers won an $8 million judgment against the insurance company. Immediately thereafter, Ms. Weathers states "Everybody lied, all the way down the line, and that came back to haunt them." (12(m) Stmt. ¶ 47; 12(n) Resp.Stmt. ¶ 47). The voiceover concludes with statements about Weathers moving on with her life after this experience. In closing, the on-

screen announcer states "that revenge is a dish which is most thoroughly enjoyed when it is served cold." (12(n) Stmt. Ex. 3, p. 9).

As a result of the national broadcast of this Hard Copy segment, Boese and B & W filed suit on September 30, 1993 against Paramount, Brennan, Dimond, and Weathers, n/k/a Johnson, for defamation per se, statutory defamation per se, and false light invasion of privacy of Boese. On October 22, 1993, B & W voluntarily dismissed itself as party plaintiff to the action. On January 14, 1994, defendant Johnson brought a motion to dismiss for lack of personal jurisdiction, which this court denied. Boese filed a verified amended complaint on February 11, 1994. Now before the court is defendants motion for summary judgment as to all counts.

### Motion for Summary Judgment

The court will render summary judgment only if the factual record shows "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court will not render summary judgment if a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty, Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 171 (7th Cir.1996).

On a motion for summary judgment, the moving party "bears the initial burden of showing that no genuine issue of material fact exists." *Hudson Ins. Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477. U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). Then the burden shifts to the nonmoving party, which "must set forth specific facts demonstrating that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir.1995) (citations omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995).

### Discussion

The court must determine whether statements attributed to defendants are defamatory per se and cast plaintiff in a false light. The parties agree that plaintiff's defamation claims and false light invasion of privacy claim are governed by Illinois law. *Boese v. Paramount Pictures Corp.*, 93 C 5976, 1994 WL 484622 (N.D.Ill. Sept. 2, 1994).

In general, "[a] statement is defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Gosling v. Conagra, Inc.*, 95 C 6745, 1996 WL 199738, at *3 (N.D.Ill. April 23, 1996) (citing, *Quinn v. Jewel Food Stores, Inc.*, 276 Ill.App.3d 861, 865, 213 Ill.Dec. 204, 208, 658 N.E.2d 1225, 1229 (1st Dist.1995)); *Kolegas v. Heftel Broadcasting Corporation, et al.*, 154 Ill.2d 1, 10, 180 Ill.Dec. 307, 312, 607 N.E.2d 201, 206 (1992). To establish liability for defamation there must be: (1) a false and defamatory statement of and concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Restatement (Second) of Torts § 558 (1977); *See* W. Page Keeton et al., Prosser and Keeton on Torts § 113 at 802 (5th ed. 1984). There are two types of defamation: per se and per quod.

### I. Defamation per se

A statement is defamatory per se if the defamatory character is apparent on the face of the communication; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to her reputation may be presumed. *Kolegas*, 154 Ill.2d at 10, 180 Ill.Dec. at 312, 607 N.E.2d at 206. A statement is defamatory per quod, if the defamatory character of the statement is not apparent on its face, instead extrinsic facts are required to explain its defamatory meaning. *Id.*

In Illinois, courts have recognized four categories of statements that are defamatory

per se: (1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business. *Id.; Swick v. Liautaud,* 169 Ill.2d 504, 215 Ill.Dec. 98, 105, 662 N.E.2d 1238, 1245 (1996); *Mittelman v. Witous,* 135 Ill.2d 220, 238–39, 142 Ill.Dec. 232, 241, 552 N.E.2d 973, 982 (1989). Additionally, the Illinois legislature has also recognized another category of statements that are defamatory per se. Words that charge a person with "swearing falsely" or words that amount to such a charge are considered defamatory per se. 740 Ill.Comp.Stat. 145/2 (West 1996).[1]

The alleged defamatory statement at issue, "[e]verybody lied all the way down the line, and that came back to haunt them", loosely falls into categories three, four, and Illinois' legislative category. Courts have found that calling someone a liar or implying as much might permit defamation recovery. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); *Pease v. International Union of Operating Engineers Local,* 208 Ill.App.3d 863, 871, 153 Ill.Dec. 656, 661, 567 N.E.2d 614, 619 (2d Dist.1991); *Mittelman,* 135 Ill.2d at 247, 142 Ill.Dec. at 245, 552 N.E.2d at 986 (1989).

## A. Innocent Construction Rule

■ However, even if a statement falls into one of these categories, it will not be defamatory per se, if it is reasonably capable of an innocent construction. *Kolegas,* 154 Ill.2d at 11, 180 Ill.Dec. at 312, 607 N.E.2d at 206. The innocent construction rule[2] requires a court to consider

a written or oral statement ... in context, with the words and the implications therefrom given their natural and obvious mean-

ing; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it can not be actionable per se. This preliminary determination is properly a question of law to be resolved by the court in the first instance.

*Chapski v. Copley Press,* 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 888, 442 N.E.2d 195, 199 (1982); *See Kolegas,* 154 Ill.2d at 11, 180 Ill.Dec. at 312, 607 N.E.2d at 206; *Mittelman,* 135 Ill.2d at 233, 142 Ill.Dec. at 238, 552 N.E.2d at 979; *Gosling,* 95 C 6745, 1996 WL 199738 at *3; *Pope v. Chronicle Publishing Company,* 95 F.3d 607, 613–14 (7th Cir.1996).

Therefore, part of the innocent construction rule involves an inquiry into whether the statement can reasonably be interpreted as referring to the plaintiff or someone else; effectively, whether the alleged defamatory statement is "of and concerning" the plaintiff. *Chapski,* 92 Ill.2d at 352, 65 Ill.Dec. at 888, 442 N.E.2d at 199. "Plaintiff, therefore, carries the burden of proving that the defamatory meaning attached to him. He does not have to be named, the reference may be an indirect one, with the identification depending upon circumstances known to the hearers, and it is not necessary that every listener understand it, so long as there are some who reasonably do; but the understanding that the plaintiff is meant must be a reasonable one." Prosser and Keeton on Torts § 111, at 783. In *J.H. Desnick, M.D. v. American Broadcasting Companies, Inc.,* an opthalmic clinic and two of its surgeons brought a defamation action against a television network and those involved in the broadcast regarding practices at the clinic. The report focused on unnecessary cataract surgery, particularly the incidence of glare experienced by patients. The Seventh Circuit held that because the part of the broadcast about the tampering with the glare machine

---

1. The statute provides that:
 [i]t shall be deemed slander, and shall be actionable, to charge any person with swearing falsely, or with having sworn falsely, or for using, uttering or publishing words of, to or concerning any person, which, in their common acceptation, amount to such charge, whether the words be spoken in conversation

 of, and concerning a judicial proceeding or not.
 Ill.Comp.Stat. 145/2 (West 1996).

2. In Illinois, the "innocent construction" rule applies only to defamation per se cases. *Mittelman,* 135 Ill.2d at 232–33, 142 Ill.Dec. at 238, 552 N.E.2d at 979.

follows immediately after Dr. Simon and Dr. Glazer asked test patients about glare, the inference that Glazer and Simon are mixed up in the tampering is not inevitable, but it is sufficiently probable to entitle them to sue. *Desnick,* 44 F.3d 1345, 1349 (7th Cir.1995); *See also, Stevens v. Tillman,* 855 F.2d 394, 397 (7th Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1339, 103 L.Ed.2d 809 (1989) ("A statement that logically refers to a particular person may be actionable."); *cf. Schaffer v. Zekman,* 196 Ill.App.3d 727, 732, 143 Ill.Dec. 916, 919, 554 N.E.2d 988, 991 (1st Dist.1990) (The court found that because the plaintiff was never mentioned by name, nor pictured during the broadcast, the statement, on its face, does not injure plaintiff and is not defamatory per se.)

■ Plaintiff's contention that he is clearly identified in the Hard Copy segment is overstated, but not completely unreasonable. Near the end of the segment, there is a video image of Virginia Weathers being interviewed. She says: "Everybody lied all the way down the line, and that came back to haunt them." (12(m) Stmt. ¶ 47; 12(n) Resp. Stmt. ¶ 47). At no point during the broadcast is plaintiff referred to by name. However, he is shown earlier on in the segment testifying on the witness stand. (12(n) Stmt. ¶ 11) One possible interpretation is that he is an expert witness for the insurance company, and therefore, included within Weathers' reference to "everybody". Therefore, following the guidance of *Desnick,*[3] this court finds that Virginia Weathers' statement is not reasonably capable of an innocent construction because the defamatory meaning of "lied" is evident and the statement sufficiently imputes to plaintiff a lack of integrity in the discharge of his duties of employment and lack of ability in his profession.

### B. Constitutionally Protected Expressions of Opinion

■ Even if the court finds that the statement is not reasonably susceptible to an in-

nocent construction, the statement still may not be actionable if it is a constitutionally protected expression of opinion. *Gosling,* 95 C 6745, 1996 WL 199738 at *4 (citing *Mittelman,* 135 Ill.2d at 239, 142 Ill.Dec. at 241, 552 N.E.2d at 982). If the statement can not reasonably be interpreted as stating actual facts about a person, it is constitutionally protected speech. *Milkovich,* 497 U.S. at 20, 110 S.Ct. at 2706–07.

■ More directly, "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir.1993) (citing, *Milkovich,* 497 U.S. at .17–21, 110 S.Ct. at 2704–07); *Mittelman,* 135 Ill.2d at 241–43, 142 Ill.Dec. at 242–43, 552 N.E.2d at 983–84; *Gosling,* 95 C 6745, 1996 WL 199738 at *4.

The problem is not characterizing clear opinion or fact statements, but rather classifying those fuzzy statements that fall somewhere in the middle. Courts have responded by creating their own tests to protect opinion.

In *Mittelman,* the Illinois Supreme Court highlighted two such approaches. *Mittelman,* 135 Ill.2d at 241–43, 142 Ill.Dec. at 242–43, 552 N.E.2d at 983–84. First, the Restatement defines a statement of fact as one that "concern[s] the conduct or character of another" and "may consist of [allegations concerning] a particular act or omission that falls within the definition of a defamatory statement set forth in § 559 in Restatement."[4]

With this as a reference point, the Restatement then distinguishes between "pure opinion" and "mixed opinion". Pure opinion is an expression of opinion by which the maker of

---

**3.** The court finds *Desnick* to be persuasive because, although the plaintiff, in that case, does not explicitly designate his claim as libel per se, it is clear from the face of the complaint that plaintiff's allegations invoke categories three and four for libel per se in Illinois.

**4.** Restatement (Second) of Torts Section 559 provides, in relevant part, that: A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. Restatement (Second) of Torts § 559.

a comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character. Generally, if both parties to the communication know the facts or assume their existence, the maker of the comment need not himself express the alleged facts. Mixed opinion "is an opinion in form or context that is apparently based upon facts which have not been stated by the defendant or assumed to exist by the parties to the communication." Restatement (Second) of Torts § 566. The Illinois Supreme Court has found that mixed opinion is actionable. *Mittelman*, 135 Ill.2d at 242, 142 Ill. Dec. at 242, 552 N.E.2d at 983.

While the Restatement approach has been generally accepted, some federal courts have adopted their own tests to unravel the opinion-fact conundrum. In *Ollman v. Evans,* the D.C. Circuit created its own test, a four-point analysis to determine whether a statement implies factual allegations. The court must determine:

(1) whether the statement has a precise core of meaning for which a consensus of understanding exists, or conversely, whether the statement is indefinite and ambiguous; (2) whether the statement is verifiable; i.e., capable of being objectively characterized as true or false; (3) whether the literary context of the statement would influence the average reader's readiness to infer that a particular statement has factual content; and (4) whether the broader social context or setting in which the statement appears signals a usage as either fact or opinion.

750 F.2d 970, 979 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). Illinois courts have adopted the *Ollman* test to supplement the Restatement's analytical approach. *Mittelman*, 135 Ill.2d at 244, 142 Ill.Dec. at 243, 552 N.E.2d at 984; *Gosling*, 95 C 6745, 1996 WL 199738 at *4.

Applying both the Ollman test and Restatement approach, the court must determine whether Weathers' statement is fact or nonactionable opinion. The key inquiry is whether there are specific facts at the root of the statement capable of being verified. The court looks to relevant case law to reach its decision.

In *Piersall v. SportsVision of Chicago,* the reporters asked the defendant about the plaintiff. Defendant made the following statements about the plaintiff and another person: "I don't mind criticism, but they both told a lot of lies ... The public could not know the truth about them, they are both liars." *Piersall,* 230 Ill.App.3d 503, 506, 172 Ill.Dec. 40, 595 N.E.2d 103 (1st Dist.1992). The Illinois Appellate Court agreed with the trial court "that the general statement that someone is a liar, not being put in context of specific facts, is merely opinion." *Id.* at 510, 172 Ill.Dec. at 44, 595 N.E.2d at 107.

In *Gosling,* the plaintiff-seller brought a defamation action against the defendant-buyer because of statements the defendant made in a letter to an intermediary regarding plaintiff's lack of professionalism. The court found that the defendant's letter provides a detailed background of facts from which she offers her pure opinions. The conclusions she reached are not objectively verifiable and can not form the basis for a defamation action. *Gosling,* 95 C 6745, 1996 WL 199738 at *6.

However, in *Pease v. International Union of Operating Engineers Local 150,* the court reached a different outcome. A newspaper reporter interviewed the defendant, a representative of defendant's union, regarding a charge made by the plaintiff that defendants engaged in acts of vandalism. In response to a reporter's question defendant stated: "He lies a lot." The court held that the statement was libel per se because it was made in a specific factual context. *Pease,* 208 Ill. App.3d 863, 871, 153 Ill.Dec. 656, 661, 567 N.E.2d 614, 619 (2d Dist.1991). *See also, Milkovich,* 497 U.S. at 21, 110 S.Ct. at 2707 (The Supreme Court held that the connotation from the defendant's newspaper article that the plaintiff committed perjury is sufficiently factual to be susceptible of being proved true or false. A determination whether the plaintiff lied can be made on a core of objective evidence by comparing the plaintiff's testimony before the high school

athletic association board with his later testimony before the trial court.) [5]

■ Plaintiff fails to set forth sufficient facts that Weathers' statement was a fact statement in order to withstand defendant's motion for summary judgment. As in *Piersall* and *Gosling,* there are no specific facts at the root of Weathers' statement capable of being objectively verified as true or false. Additionally, the statement is indefinite and ambiguous; it is unclear whether it has factual content; and within the context of the Hard Copy episode, appears to be Weathers' interpretation of these recent events.

Finding the statement to be nonactionable opinion, the court will not address defendant's argument that plaintiff's is a limited purpose public figure who must prove actual malice to succeed on his defamation claim.

## II. False Light Invasion of Privacy

■ The issue before the court is whether the statement cast plaintiff in a false light. Under Illinois law, there are three elements to a claim for false light invasion of privacy: "first, the allegations must show that the plaintiff was placed in a false light before the public as a result of the defendant's actions; second, the court must decide whether a trier of fact could decide that the false light in question would be 'highly offensive to a reasonable person'; and third, plaintiffs must allege and prove that the defendants acted with actual malice, defined . . . as knowledge of falsehood or reckless disregard for whether the statements were true or false." *Pope,* 95 F.3d 607, 616, (citing *Kolegas,* 154 Ill.2d at 17–18, 180 Ill.Dec. at 315–16, 607 N.E.2d at 209–10); *Chisholm v. Foothill Capital Corporation,* 940 F.Supp. 1273, 1284–85 (N.D.Ill. 1996); *Russell v. American Broadcasting Company, Inc.,* 94 C 5768, 1995 WL 330920 at *5 (N.D.Ill. May 31, 1995). Plaintiff has set forth sufficient facts to withstand defendants' motion for summary judgment on this count for false light invasion of privacy.

■ As to the first element, plaintiff has set forth facts demonstrating that he was placed in a false light by the October 7, 1992 Hard Copy segment. Although not clearly obvious as plaintiff suggests, the words and pictures roughly imply that plaintiff was an expert witness for the insurance company and, in that capacity, lied on the witness stand. The implication being that plaintiff had sworn falsely on the witness stand and lacked integrity in discharging his duties. The publication prong for invasion of privacy torts means communicating the matter to the public at large or to so many persons that the matter must be regarded as one of general knowledge. *Chisholm,* 940 F.Supp. at 1284–85. The Hard Copy episode aired nationally, including locally in the Chicago area, on October 7, 1992, (12(n) Stmt. ¶ 9), satisfying the publication prong.

The court finds that a trier of fact could decide that the charge that a person lied on the witness stand and in the discharge of his duties would be "highly offensive to a reasonable person". Finally, plaintiff has set forth several facts, considered overall, demonstrating that there is a genuine issue for trial regarding whether defendant acted with actual malice. Plaintiff highlights several facts, some of which are: (1) that defendants knew the seriousness and the potential harm to plaintiff's reputation and livelihood the Hard Copy segment would cause (12(n) Stmt. ¶ 28); (2) that Weathers was motivated by revenge and the Paramount defendants cooperated with her (12(n) Stmt. ¶¶ 62–65); (3) the defendants included Boese's picture in the segment, yet failed to contact him as a source, which was a deviation from generally accepted standards of journalism (12(n) Stmt. ¶¶ 34, 46–48, and generally 28–57); and (4) Hard Copy's failure to investigate numerous file sources and persons is probative of recklessness (12(n) Stmt. ¶¶ 28–57, and generally 62–65).

For the above reasons, the court finds that plaintiff has set forth sufficient facts to withstand defendants' motion for summary judg-

---

**5.** *See also, Mittelman,* 135 Ill.2d at 247, 142 Ill.Dec. at 245, 552 N.E.2d at 986 (The court found that the defendant's statement: that "the waste of time and money in preparing the Kerr-McGee case was not his fault, but that of Mittelman [the plaintiff], who sat on the statute of limitations defense", was a verifiable statement of fact and, therefore, actionable.)

ment as to this count for false light invasion of privacy.

### Conclusion

For the reasons set forth above, the court grants defendants' motion for summary judgment as to Count I and II—Defamation per se and Statutory Defamation per se. The court denies defendants' motion for summary judgment as to Count III for false light invasion of privacy. The parties are instructed to discuss settlement before the next status hearing scheduled for Friday, November 15, 1996 at 9:00 a.m.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Before the court is the Paramount Defendants' motion to reconsider part of the order entered by this court on October 29, 1996 or, alternatively, for certification to the Seventh Circuit.

### I. Motion to Reconsider

Paramount defendants urge the court to reconsider its order denying their motion for summary judgment as to plaintiff's false light invasion of privacy claim. Defendants base their motion on two arguments: First, defendants argue that this court's finding that

the alleged defamatory statement was not "capable of being objectively verified as true or false" requires the dismissal of plaintiff's false-light claim. Secondly, defendants argue that plaintiff has failed to establish a genuine issue of material fact regarding actual malice.

### A. Opinion

Specifically, defendants contend that a finding that a statement is a constitutionally protected expression of opinion and therefore, a non-actionable statement under the law of defamation, also applies to a false-light invasion of privacy claim. Defendants suggest that the law is very clear in this area by referring to decisions of other circuits. However, upon a closer examination, the law appears to be less settled than defendants suggest.

While the court agrees with defendants that other circuits have found that opinion is a defense to a false-light claim;[1] the court also recognizes that courts universally have held that a statement need not be defamatory for a false-light privacy action to lie. *Silk v. City of Chicago,* No. 95 C 0143, 1996 WL 312074 *36 (N.D.Ill. June 7, 1996); *Zechman v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 742 F.Supp. 1359, 1373 (N.D.Ill.1990).[2]

---

1. *See Partington v. Bugliosi,* 56 F.3d 1147, 1160–61 (9th Cir.1995); *Moldea v. New York Times Co.,* 22 F.3d 310, 319 (D.C.Cir.), *cert. denied,* 513 U.S. 875, 115 S.Ct. 202, 130 L.Ed.2d 133 (1994); *White v. Fraternal Order of Police,* 909 F.2d 512, 518 (D.C.Cir.1990); *Ault v. Hustler Magazine, Inc.,* 860 F.2d 877, 880 (9th Cir.1988), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989); *Rinsley v. Brandt,* 700 F.2d 1304, 1307 (10th Cir.1983); *See also* Restatement (Second) of Torts § 652E cmt. e (1977) ("When the false publicity *is also* defamatory so that either action can be maintained by the plaintiff, it is arguable that limitations of long standing that have been found desirable for the action for defamation should not be successfully evaded by proceeding upon a different theory of later origin, in the development of which the attention of the court has not been directed to the limitations. As yet there is little authority on this issue.") (emphasis added); Rodney A. Smolla, Law of Defamation § 10.02[2][a] (1995) ("To permit, via

the false light tort, causes of action that would otherwise not be permitted as a matter of law because they fail to allege provably false statements of fact, is to open a wide and dangerous loophole in the fabric of defamation law").

2. *See also Douglass v. Hustler Magazine,* 769 F.2d 1128, 1134 (7th Cir.1985), *cert. denied,* 475 U.S. 1094, 106 S.Ct. 1489, 89 L.Ed.2d 892 (1986); *Cibenko v. Worth Publishers,* 510 F.Supp. 761, 766 (D.N.J.1981); *Fogel v. Forbes, Inc.,* 500 F.Supp. 1081, 1087 (E.D.Pa.1980); *Michigan United Conservation Clubs v. CBS News,* 485 F.Supp. 893, 903 (W.D.Mich.1980), *aff'd,* 665 F.2d 110 (6th Cir.1981); Restatement (Second) of Torts § 652E cmt. b ("It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed."); Rodney A. Smolla, Law of Defamation § 10.02[2][b] and [4][b] ("The single most important distinguishing characteristic of the false light tort is that the publication need not be defamatory ... [C]ourts

In *Silk*, the court found the alleged defamatory statement—"useless piece of shit"—to be a non-actionable expression of opinion. *Silk*, No. 95 C 0143, 1996 WL 312074 *35. However, the court did hold that, based on this same statement and low performance ratings, the plaintiff, nonetheless, stated a claim for false light invasion of privacy. *Id.* at *37. Similarly, in *Zechman*, applying the innocent construction rule, the court dismissed the plaintiff's defamation per se claim. *Zechman*, 742 F.Supp. at 1372. However, the court held that the innocent construction rule did not apply to the false-light claim [3] and therefore, the series of acts at issue conveyed a message actionable under a false-light privacy theory. *Id.* at 1374–74.

 This court reaches the same conclusion the *Silk* court and *Zechman* court reached: a non-defamatory statement can still give rise to a false-light invasion of privacy claim. Although, this court found the statement at issue to be an opinion and non-actionable in the defamation context, this finding does not change the court's analysis of plaintiff's false light claim.

## B. Actual Malice

The defendants' second basis for reconsideration is that plaintiff failed to establish a genuine issue of material fact concerning actual malice. Defendants unequivocally state that "plaintiff has come forward with no evidence that even suggests that the Paramount Defendants (or Ms. Pennington) had any subjective doubt as to the truth of [sic] falsity of any statement." (Def. Mot. at 5.) However, plaintiff has set forth enough facts in the 12(n) Statement based on the depositions of Pennington, Malm, and Brennan and the videotaped interviews with Virginia Weathers and her attorney to establish that a genuine issue of material fact exists as to actual malice.[4]

Defendants challenge the idea that a departure from journalistic standards has bearing on the "actual malice" determination. Citing to both *Gertz v. Robert Welch, Inc.*, 680 F.2d 527 (7th Cir.1982), *cert. denied*, 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983), and *Woods v. Evansville Press Co.*, 791 F.2d 480 (7th Cir.1986), defendants argue that "the Seventh Circuit's decision in *Woods* ... demonstrates that failure to comply with so-called journalistic standards is not relevant to the actual malice inquiry, which is a subjective analysis." (Def. Mot. at 8.) However, defendants' argument overlooks the fact-intensive nature of the *Woods* court's determination [5] and mischaracterizes the

increasingly perceive that the primary practical difference between false light and defamation is that false light claims do not need to rise to the level of being defamatory".); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 117, at 866 (5th ed. 1984) (The tort of false light invasion of privacy "is much more likely to be utilized in those cases where the false statement is not defamatory.")

3. Defendants cite *Jefferson v. Winnebago County*, No. 94 C 50151, 1995 WL 89064 (N.D.Ill.1995) generally for the proposition that "under Illinois law, the innocent construction rule and the defense of opinion apply equally to false light claims." (Def. Mot. at 2.) However, the court is unable to find this proposition in Judge Reinhard's opinion. Additionally, although the Seventh Circuit affirmed the district court opinion, it was not on the above-mentioned grounds. The Seventh Circuit affirmed the district court's dismissal of Jefferson's First Amendment claims because Jefferson's interest in publicly criticizing the local police department and court system was outweighed by his employer's interest in the efficient operation of its probation department. *Jefferson v. Ambroz*, 90 F.3d 1291, 1297 (7th Cir.1996).

4. In Illinois, there are three elements necessary to establish a false-light invasion of privacy claim, one of which is actual malice. To satisfy the actual malice element, "plaintiff must allege and prove that the defendant acted with actual malice, that is, with knowledge that the statement was false or with reckless disregard for whether the statement was true or false." *Aroonsakul v. Shannon*, 279 Ill.App.3d 345, 216 Ill.Dec. 166, 170, 664 N.E.2d 1094, 1098 (2d Dist.1996) (citing *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201 (1992)).

5. Unlike *Gertz*, the *Woods* court held that based upon their review of the record that the plaintiff failed to demonstrate that a trier of fact reasonably could find that the defendants published the column with actual malice. *Woods*, 791 F.2d at 489. The court based this finding on the fact that even though the author of the article interviewed a disgruntled employee of the plaintiff, this does not suggest that the author doubted the veracity of his source. Additionally, the author knew the employee prior to the interview for the article and found that the employee's comments were consistent with facts known to the author at the time the article was published. *Id.* at 488.

Seventh Circuit's holding in *Gertz.* The *Gertz* court found that a failure to comply with journalistic standards to be very relevant to determining whether a party acted with actual malice. The *Gertz* court focused on the fact that "the publisher had 'obvious reasons to doubt the veracity ... or accuracy of the author of the defamatory statements, and conducted only the most perfunctory investigation of the truth or falsity of the statements in the article.'" *Id.* at 538. Additionally, the article was submitted for typesetting only three to four hours after it was received. The usual editing time was shortcut, not because it was hot news, but because of editorial preference and prior planning. *Id.* The court held that "[t]here was more than enough evidence for the jury to conclude that this article was published with utter disregard for the truth or falsity of the statements contained in the article about Gertz." *Id.*

In the present case, plaintiff has set forth facts in the 12(n) Statement regarding defendants journalism similar to the facts highlighted by the *Gertz* court. Specifically, plaintiff sets forth the following: 1. The Weathers story was not "hot" news because it did not have to be aired immediately. (12(n) Stmt. ¶ 29 (citing Ex. 5, Pennington Dep. 125:16–22)); 2. The Paramount defendants were under no particular deadline with respect to investigation of the Weathers story, and thus could have investigated the truth about Boese if they had chosen to do so. (12(n) Stmt. ¶ 30 (citing Ex. 5, Pennington Dep. 32:9–13)). As in *Gertz,* this court finds that plaintiff has set forth enough facts to suggest that a genuine issue exists for trial as to whether defendants acted with utter disregard for the truth or falsity of the statement contained in the Hard Copy episode.

For the foregoing reasons, Paramount defendants' motion to reconsider in part is denied.

## II. *Certification*

■ Defendants have moved this court for an order certifying the above questions for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The decision whether to allow an immediate interlocutory appeal of a non-final order under section 1292(b) is within the discretion of the district court. *Swint v. Chambers County Com'n,* 514 U.S. 35, ——, 115 S.Ct. 1203, 1210, 131 L.Ed.2d 60 (1995). When deciding a motion for certification, the district court must consider the following factors: (1) whether the motion to be appealed involves a controlling question of law; (2) whether an immediate appeal from the order may materially advance the ultimate termination of the litigation; and (3) whether there is a substantial ground for difference of opinion on that question of law. 28 U.S.C. § 1292(b); *Kirkland & Ellis v. CMI Corporation,* No. 95 C 7457, 1996 WL 674072 *2 (N.D.Ill. Nov. 19, 1996). Another consideration is whether certification would only prolong the life of the litigation at all the parties' expense. *Id.* (citing *Harris v. Karri–On Campers, Inc.,* 640 F.2d 65, 68 (7th Cir.1981)). Each element of the section 1292(b) test must be met before certification may be granted. *Id.* (citing *Segni v. Commercial Office of Spain,* 650 F.Supp. 1045, 1046 (N.D.Ill.1987)).

The party seeking interlocutory review has the burden of persuading the court that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Fisons Limited v. United States,* 458 F.2d 1241, 1248 (7th Cir.), *cert. denied,* 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (7th Cir.), *cert. denied,* 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972). Courts generally disfavor piecemeal appeals in favor of a single appeal. *Fisons,* 458 F.2d at 1248.

■ Applying these principles, the court turns to the present motion for certification. The court must determine whether there is a substantial ground for difference of opinion on the question of law. An interlocutory review should not be allowed merely to provide a review of difficult rulings in hard cases. *Kirkland & Ellis v. CMI Corporation,* No. 95 C 7457, 1996 WL 674072 at *4 (citing *McCann v. Communications Design Corp.,* 775 F.Supp. 1506, 1534 (D.Conn.1991)). If the central question of law has not been settled by controlling authority, the moving party must still show that there is a substantial likelihood that the district court ruling

will be reversed on appeal. *Id.* (citing *TCF Banking and Sav., F.A. v. Arthur Young & Co.*, 697 F.Supp. 362, 366 (D.Minn.1988)).

While defendants have argued that controlling questions of law are involved, defendants have failed to demonstrate that the Seventh Circuit, viewing the facts in the light most favorable to the plaintiff, will reverse our ruling. Therefore, the interlocutory appeal will only serve to delay the course of this litigation. Accordingly, we deny defendants' motion for certification.

### Conclusion

For all of the foregoing reasons, both Paramount defendants' motion for partial reconsideration and motion for certification are denied.