EVELYN ANDERSON, M. D., Plaintiff-Appellant, *v.* MARSHALL MATZ, M. D., Defendant-Appellee.

First District (3rd Division)   No. 77-1749

Opinion filed December 6, 1978.

John J. Riordan, of Riordan and Brown, of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (Robert B. Austin, Hugh C. Griffin, and R. Bruce Duffield, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This matter arises out of a libel acton brought by plaintiff against defendant for certain comments contained in a report. The trial court granted defendant's motion to dismiss the complaint. The trial court found that the statements attributable to defendant which formed the basis of plaintiff's complaint were susceptible of an innocent construction and were privileged.

Plaintiff, Dr. Evelyn Anderson, is a pediatrician and encephalographer. She was retained to perform an electroencephalographic examination (hereafter referred to as an "EEG") upon an 11-year-old girl who suffered a head injury in an automobile accident in 1970. The purpose of the EEG examination was to record and interpret electric currents generated by the brain. Dr. Anderson's report indicated abnormal brain tracings in the patient and she diagnosed epilepsy.

The other vehicle involved in the accident was insured by Liberty Mutual Insurance Company. After the injured child filed suit against the policy holder, the defendant, Dr. Marshall Matz, was retained by Liberty Mutual to examine the claimant and to render an opinion concerning the child's medical condition. Defendant, a neurosurgeon, examined the child, took a history, and was informed of plaintiff's EEG report. Defendant then submitted the following report to Liberty Mutual:

"At your request I had the opportunity * * * of examining this 11 y/o student, who was accompanied by her father. They gave a history of an automobile accident on November 1, 1970, the patient at that time, being a backseat passenger when their vehicle was struck by another automobile. The patient states that she struck her head on the window dividing post between the front and back windows. There were no open wounds * * * . Since that time the patient states that 'perhaps' four times a year she has a headache, sometimes on the right side, occasionally on the left side—that it is not of any severity—does not cause her to miss school where she is an active student, participating in all the usual school functions, including gymnastics.
* * *

The cranial nerves including optic fundi are bilaterally intact. Movement of the neck is unrestricted and the reflexes in both upper and lower extremities are symmetrical. There is neither weakness, ataxia nor sensory loss and no pathologic reflexes could be demonstrated."

After opining that he could not perceive any causal relation between the minor blow to the head and the occasional headaches complained of by the child, defendant concluded:

"Apparently, there is some question about an EEG report, the tracing being 'abnormal'. I would be happy to review those reports, although, if they are the usual type of thing that Dr. Anderson puts out with her usual recommendations for anticonvulsive treatment they are of no clinical value and should not in any way influence your thinking on this case."

A copy of the foregoing report was delivered to claimant's attorney who brought it to the attention of plaintiff. In her complaint, plaintiff alleged that the last-quoted paragraph of the report was libelous in that it imputed to her a general lack of professional knowledge or skill. The complaint further charged that defendant was not himself an encephalographer and that he made the statement without first examining plaintiff's report or verifying the accuracy of his recommendation relating thereto.

Plaintiff contends that the trial court erred in finding that defendant's

statements were susceptible of an innocent construction and in holding that the statements were protected by a privilege. We shall first consider whether the statements can be innocently construed. Plaintiff, emphasizing defendant's use of the word "usual" in reference to her reports, argues that the statements can only be construed in a manner which imputes to her not only a lack of professional ability in this instance, but also with respect to all other patients upon whom she has performed an EEG. Plaintiff urges that, coupled with defendant's lack of expertise in the field of encephalography and his admitted unfamiliarity with the contents of her report, defendant's statements constitute actionable libel.

■■ ■ Whether a statement is libelous is a question of law for the trial court. (*Valentine v. North American Co.* (1974), 60 Ill. 2d 168, 328 N.E.2d 265; *Moricoli v. Schwartz* (1977), 46 Ill. App. 3d 481, 361 N.E.2d 74.) In making that determination, courts of this State apply the innocent construction rule which requires that the offending language "is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (*John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105.) The law of libel does not provide redress for "every expression of opinion touching on a person's capabilities or qualifications * * * no matter how much the complained of statement may injure the subject person in his own conception." *Byars v. Kolodziej* (1977), 48 Ill. App. 3d 1015, 1017, 363 N.E.2d 628.

■■ We believe the trial judge correctly determined that defendant's statements were susceptible of an innocent construction. Especially in the field of medicine, where equally capable doctors may arrive at conflicting conclusions regarding proper treatment for a patient, allegedly libelous statements must be carefully examined in context. The following observation of the trial court is accurate: "We do not have here a charge of unprofessional conduct by Dr. Anderson * * * . We have here a difference from a doctor recruited by the defense to evaluate a report by the plaintiff's [physician]." Defendant further explained that an EEG interpretation is without clinical value absent a correlation with a detailed history and complete examination. His recommendation relating to Dr. Anderson's report, therefore, simply indicated to Liberty Mutual that the EEG report should not be considered conclusive for purposes of evaluating the merits of the child's suit. Since statements capable of being innocently construed must be so read, we hold that the trial court's dismissal of plaintiff's complaint was proper.

■ We also shall briefly discuss the trial court's holding that defendant's statements were absolutely privileged: An absolute privilege applies to

statements made in the course of judicial proceedings provided that they are pertinent and material to the matter in controversy. (*Macie v. Clark Equipment Co.* (1972), 8 Ill. App. 3d 613, 290 N.E.2d 912; *Harrell v. Summers* (1961), 32 Ill. App. 2d 358, 178 N.E.2d 133.) The matters in controversy in the suit brought by the injured child against Liberty Mutual's insured were the claimant's present physical condition and whether the headaches complained of were causally related to the head injury sustained in the accident. Defendant's report bore precisely on these issues. The contents of defendant's report, including the allegedly libelous statements, were material, relevant and therefore, absolutely privileged.

For the reasons stated, the judgment of the circuit court of Cook County dismissing plaintiff's complaint is affirmed.

Judgment affirmed.

JIGANTI and SIMON, JJ., concur.