CHAOVANEE AROONSAKUL *et al.*, d/b/a Alzheimer's and Parkinson's Treatment Center, Plaintiffs-Appellants, v. KATHLEEN SHANNON *et al.*, Defendants-Appellees (Pamela Zekman *et al.*, Defendants).

Second District    No. 2—95—0706

Opinion filed April 26, 1996.

McLAREN, P.J., specially concurring.

John R. Wimmer, of Downers Grove, for appellants.

Jeffrey I. Cummings and George F. Galland, both of Davis, Miner, Barnhill & Galland, P.C., of Chicago, for appellees.

JUSTICE THOMAS delivered the opinion of the court:

The plaintiffs, Dr. Chaovanee Aroonsakul (individually referred to hereinafter as the plaintiff) and A.P.M.C., an Illinois not-for-profit corporation, brought an action against 11 different defendants, including Pamela Zekman, Kathleen Shannon, Jacob Fox, Linda MacLennan, Adele Arakawa, and WBBM TV, alleging defamation, false-light invasion of privacy, and conspiracy to defame the plaintiffs. Pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)), the trial court dismissed with prejudice the plaintiffs' sole claim against Shannon, which alleged false-light invasion of privacy. The court dismissed without prejudice the sole claim against Fox, which alleged a conspiracy to defame the plaintiffs. The plaintiffs appeal the dismissal of their claims against Shannon and Fox. The claims against the other defendants remain pending.

The plaintiffs' second amended complaint alleged that the plaintiff is a physician and surgeon practicing medicine at the offices of A.P.M.C., doing business as the Alzheimer's and Parkinson's Treatment Center, in Naperville, Illinois. According to the complaint, the plaintiff invented the first effective treatment for neurodegenerative diseases in 1983. The treatment involves the plaintiff's alleged discovery that the major factor in the cause of various neurodegenerative diseases is the depletion and imbalance of hormones and that by replenishing certain hormones the diseases can be treated effectively. The plaintiff applied for a patent of her treatment in 1984 and was eventually issued seven United States patents and two foreign patents on methods of diagnosing and treating Alzheimer's disease and other diseases of the central nervous system. Since 1983, the plaintiff has treated over 400 patients with her patented method.

The second amended complaint further alleged that defendant Shannon is a neurologist affiliated with Rush-Presbyterian-St. Luke's Medical Center, which recently conducted an 11-year study to determine the effects of hormonal replacement therapy on women.

According to the complaint, Shannon treated some patients with neurodegenerative diseases and was aware of the plaintiff's treatment methods.

The plaintiffs' claims for defamation and false-light invasion of privacy stem from WBBM-TV broadcasts aired November 5-6, 1992. The broadcast on November 5, 1992, was titled "Alzheimer's Investigation." It was introduced by defendant MacLennan as follows:

> "Alzheimer's Disease. It is a mental disease that erases your memory, and it can be devastating. Researchers around the world are trying to find a cure, but a doctor in Naperville claims that she found a treatment ten years ago. And as Channel 2's Pam Zekman reports, she is exploiting desperate patients with false claims for her unproven cure."

Zekman then identified the plaintiff by name as the doctor and stated that "[t]he treatment is injections of massive doses of growth hormones, fertility drugs, and steroids." Zekman noted that the plaintiff "says her research shows the treatment works." MacLennan concluded the November 5, 1992, broadcast by stating:

> "[The plaintiff] refused to be interviewed for our story. Tomorrow at 4:30 [Zekman] will report on how other patients with other diseases have been taken as well."

The November 6, 1992, broadcast was titled "Medical Scam." Defendant Adele Arakawa introduced this broadcast with the following:

> "She's a doctor. She holds out a ray of hope for victims of incurable diseases. They have Alzheimer's, Parkinson's, MS. She says she can cure them. They pay her, then, they say, nothing happens. Channel 2's Pam Zekman tonight confronts the doctor behind the scam."

Zekman then said that the plaintiff had been charged with fraud and the State wants to revoke her medical license. Zekman described the plaintiff's treatment as a "so-called cure" involving "injections of growth hormones, fertility drugs, and steroids."

Later in the piece, Zekman introduced defendant Shannon stating that "[d]octors who reviewed some [the plaintiff's] Parkinson's research say there's no evidence to substantiate her claims." The broadcast then featured defendant Shannon with the subtitle "Kathleen Shannon, Neurologist." Shannon then stated that "I look at a brochure like this and its just as outrageous as saying that toenail polish cures Parkinson's Disease, to me." Zekman then stated that "in her brochure, [the plaintiff] lists her patents for the treatment in an apparent attempt to legitimize her claim."

The plaintiffs' complaint alleged that Shannon's statement placed the plaintiff in a false light which would be highly objectionable to a

reasonable person. The complaint further alleged that Shannon was aware of information that indicated that the plaintiff's treatment had some validity and that Shannon made her statements maliciously and recklessly. Additionally, the complaint alleged that Shannon's statement contributed to the decision of one of the plaintiff's patients to stop treatment and that another patient discontinued treatment after the broadcast.

Shannon filed a motion to dismiss the complaint for failure to state a cause of action. In her motion to dismiss, Shannon argued that (1) her statement was a constitutionally protected expression of opinion; (2) her statement was not "of and concerning the plaintiffs" because the statement did not name them; and (3) the plaintiffs were required to plead special damages and failed to do so. The trial court granted Shannon's motion to dismiss. Although it did not specify its grounds for dismissing the complaint, it appears from the record that the trial court was concerned that Shannon's statement was not "of and concerning the plaintiffs."

On appeal, the plaintiffs contend that their second amended complaint stated a cause of action against Shannon for false-light invasion of privacy.

In ruling on a section 2—615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 499 (1991). The question presented by a motion to dismiss a complaint for failure to state a cause of action is whether sufficient facts are contained in the pleadings which, if established, could entitle the plaintiff to relief. *Heerey v. Berke*, 188 Ill. App. 3d 527, 530 (1989). In making this determination, the court is to interpret the allegations of the complaint in the light most favorable to the plaintiff. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 9 (1992).

■ We note that there are three elements necessary to establish a false-light invasion of privacy claim. *Kolegas*, 154 Ill. 2d at 17. First, the allegations in the complaint must show that the plaintiff was placed in a false light before the public as a result of the defendant's actions; second, the court must determine whether a trier of fact could decide that the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and, third, the plaintiff must allege and prove that the defendant acted with actual malice, that is, with knowledge that the statement was false or with reckless disregard for whether the statement was true or false. *Kolegas*, 154 Ill. 2d at 17-18; see also *Lovgren v. Citizens First National Bank*, 126 Ill. 2d 411, 418 (1989); *Schaffer v. Zekman*, 196 Ill. App. 3d

727, 734 (1990). The tort of false-light invasion of privacy protects one's interest in being let alone from offensive publicity. *Schaffer*, 196 Ill. App. 3d at 734. Due to its similarities with defamation, certain restrictions and limitations on actions for defamation may be equally applicable to claims for false-light invasion of privacy. *Schaffer*, 196 Ill. App. 3d at 734. For example, the requirement in a defamation case that the statement be "of and concerning the plaintiff" is equally applicable to a false-light claim. *Weinstein v. Bullick*, 827 F. Supp. 1193, 1202 (E.D. Pa. 1993); *Schaffer*, 196 Ill. App. 3d at 734. This is so because the publicity forming the basis for the false-light claim must be reasonably capable of being understood as singling out, or pointing to, the plaintiff. *Michigan United Conservation Clubs v. CBS News*, 485 F. Supp. 893, 904 (W.D. Mich. 1980).

Relying on *Weinstein v. Bullick*, 827 F. Supp. 1193, 1199 (E.D. Pa. 1993), *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 267 (7th Cir. 1983), and *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982), the plaintiffs contend that Shannon's statement, read in context, should be found to be reasonably understood as referring to the plaintiff. In response, the defendants contend that the "of and concerning" requirement cannot be satisfied by coupling the defendant's statement with the surrounding material in the broadcast where the defendant has no control or editing authority over the broadcast, citing *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 708-10 (N.D. Ill. 1990).

Under Illinois law, a defamatory statement may be actionable even though the individual was not mentioned by name as long as it appears that some third party reasonably understood the statement to have referred to the individual. *Beresky v. Teschner*, 64 Ill. App. 3d 848, 851 (1978). However, the preliminary determination of whether the statement is capable of being so understood is a question of law. *Beresky*, 64 Ill. App. 3d at 851.

In *Nelson*, the plaintiffs, husband and wife, were passengers on an overseas American Airlines flight en route from Europe to Chicago. A passenger in the aisle across from the plaintiffs complained to flight attendants that her 13-year-old daughter had witnessed the plaintiffs engaging in oral sex. After conducting an in-flight investigation and after the plane landed in Chicago, airline officials made some statements about the incident to the media. The airline spokesmen did not mention the plaintiffs' names in any of their statements, nor did they say anything from which an individual would be able to identify the plaintiffs as distinguished from any other married couple on any American Airlines international flight. Reporters, however, determined the plaintiffs' identity from other

sources and then named the plaintiffs in newspaper accounts of the incident which contained the statements from airline officials.

In dismissing the plaintiffs' libel action against the airlines, the *Nelson* court applied Illinois law and found that the statements as a matter of law could not be "of and concerning" the plaintiffs because it could not be inferred from the statement alone that the defendant was speaking about the plaintiffs. The court noted that the context rule does require the court to look to other sentences in the same article to determine if the statement is about the plaintiff. The court further noted, however, that that is because a reader of the allegedly defamatory sentence would reasonably have understood each sentence written by the author to shed light on each of the same author's other sentences. *Nelson*, 741 F. Supp. at 710. In contrast, the court continued, the airlines did not write the articles in their entirety and, therefore, its words could not be characterized as being "of and concerning the plaintiffs."

■ Similarly, we find that Shannon's statements in the present case were not reasonably capable of being understood as referring to the plaintiffs. There is no way to connect the statement, standing alone, to the plaintiffs. It is only through other information disseminated by the broadcast, over which Shannon did not exercise any control, that the plaintiffs could possibly be connected to the statement.

The case law relied upon by the plaintiffs is distinguishable. In *Weinstein* a police captain was sued by a rape victim for defamatory statements he made about the victim on a television broadcast. Although the captain did not mention the plaintiff by name, his statement contained enough of the unique details about the incident to make his comments reasonably capable of being understood as referring to the plaintiff.

Likewise, in *Jacobson* the defendant news commentator did not mention the plaintiff corporation by name but did refer to the brand of cigarettes that it manufactured. The defendant did not even argue that his comments were not of and concerning the plaintiff. Again, the defendant's statement in that case contained enough unique details from which it could be concluded that the statement referred to the plaintiff. In contrast, the statement in the instant case is completely lacking in detail and does not refer to a person at all but instead refers generically to "brochures like this."

*Chapski* is also inapplicable here. That case involved allegedly libelous newspaper articles. There, the writers were responsible for their own statements in context. The case did not involve an issue of another party contributing allegedly defamatory statements in the context of a larger article.

Viewing the allegations of the second amended complaint in the light most favorable to the plaintiffs, we find that the trial court properly dismissed the plaintiffs' complaint. In the absence of a conspiracy claim, we hold that the proper context to evaluate defendant Shannon's statement is the entire interview between Shannon and Zekman, not the entire CBS broadcast over which Shannon had no control. We note that the plaintiffs' complaint does not contain an allegation that during the interview Zekman specifically asked Shannon about her impression of the *plaintiff's* brochure. However, we hold that even if the complaint contained such an allegation it would nonetheless be defective.

The plaintiffs assert that the allegations of their second amended complaint are sufficient to allow them to survive a section 2—615 motion to dismiss. They indicate that a videotape of the interview in question could contextualize the statement and prove illustrative of said statement being of and concerning the plaintiff. The plaintiffs' argument must fail. Regardless of the context, the words themselves betray any such assertion. First, we note that Shannon's response refers to "brochures like this." Even if Shannon had clearly indicated in the videotape that she had just read the plaintiff's brochure, the verbiage used by Shannon generalizes her statement to include any brochure that makes novel claims. Consequently, regardless of the context, the statement would not be of and concerning the plaintiff. It does not refer to the plaintiff at all but instead lumps into one generic category all brochures that have novel or exaggerated claims.

■ We further find that Shannon's statement was a constitutionally protected opinion. A statement of opinion relating to matters of public concern which does not contain a provably false factual connotation is fully constitutionally protected. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 111 L. Ed. 2d 1, 18, 110 S. Ct. 2695, 2706 (1990). Such a statement on matters of public concern must be provable as false before there can be liability under State defamation law. *Milkovich*, 497 U.S. at 20, 111 L. Ed. 2d at 18, 110 S. Ct. at 2706. Protection exists for statements that cannot reasonably be interpreted as stating actual facts about an individual. *Milkovich*, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706. This provides assurance that public debate will not suffer for lack of "imaginative expression" or the "rhetorical hyperbole" which has traditionally added much to public discourse. *Milkovich*, 497 U.S. at 20, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706. In the field of medicine, doctors may arrive at conflicting conclusions regarding proper treatment for a patient and allegedly defamatory statements must be carefully examined in context. *Erickson v. Aetna Life & Casualty Co.*, 127 Ill. App. 3d 753, 759 (1984);

*Anderson v. Matz,* 67 Ill. App. 3d 175, 178 (1978). Thus, it has been stated that a statement is incapable of a defamatory construction when the underlying subject matter is medical science, which is at best an inexact science in which numerous and widely varied philosophies and approaches exist and upon which there can be much debate and disagreement. *Spelson v. CBS, Inc.,* 581 F. Supp. 1195, 1202 (N.D. Ill. 1984).

In *Anderson,* a physician made a statement about another doctor criticizing the doctor's " 'usual recommendations for anticonvulsive treatment.' " *Anderson,* 67 Ill. App. 3d at 177. The appellate court affirmed the trial court's dismissal of the plaintiff's complaint noting that the case involved a difference of opinion among doctors about the proper treatment of a patient. *Anderson,* 67 Ill. App. 3d at 178.

In *Erickson,* a claim review report prepared by the defendant, who was not a physician, stated that the plaintiff chiropractor's duration and treatment of his patient was unreasonable and unnecessary given the injury incurred. The *Erickson* court found that the statement was not capable of being innocently construed. In so doing, the court distinguished *Anderson* on the basis that a difference of opinion between doctors was not involved. *Erickson,* 127 Ill. App. 3d at 759.

In *Barakat v. Matz,* 271 Ill. App. 3d 662 (1995), the defendant was retained by various worker's compensation insurers to review claims. In reviewing one of the plaintiff's cases, the defendant stated, among other things, that the plaintiff's " 'practice was a joke' " and the plaintiff was "not any good as a doctor.' " *Barakat,* 271 Ill. App. 3d at 672. In finding that defendant's comments constituted statements of fact rather than protected statements of opinion, the court noted that the defendant's remarks "clearly and directly concern plaintiff's professional conduct and character." *Barakat,* 271 Ill. App. 3d at 672.

Applying the above-mentioned principles, we find that Dr. Shannon's statement was a constitutionally protected opinion. We believe that it is important to society that physicians be afforded an opportunity to express their opinions on debatable methods of treating patients. Moreover, Shannon's statement is not sufficiently susceptible to being proven true or false. Instead, it is at best merely an opinion on the effectiveness of the plaintiff's treatment. Shannon expresses her opinion that brochures "like this" are outrageous and then engages in hyperbole by comparing it to treating Parkinson's disease with toenail polish. Additionally, the statement does not attack the plaintiff's character or professional competence and does not mention the plaintiff at all. Thus, the statement cannot be interpreted as stating actual facts about an individual. The present case is more like *Anderson,* where the defendant physician merely criticized the

plaintiff's method of treatment instead of the plaintiff's professional conduct and character, as in *Barakat*. Accordingly, we hold that Shannon's statement constituted a constitutionally protected opinion.

■ As a final matter, we note that the plaintiffs concede that this court lacks jurisdiction to entertain their appeal with respect to defendant Fox. We agree with that concession. Accordingly, we dismiss the plaintiffs' appeal with respect to defendant Fox.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HUTCHINSON, J., concurs.

PRESIDING JUSTICE McLAREN, specially concurring:

I specially concur because I believe that Dr. Shannon's statements are sufficiently capable of being understood to refer to the plaintiff. See *Beresky v. Teschner*, 64 Ill. App. 3d 848, 851 (1978). Dr. Shannon knew she was referring to the plaintiff when she made her statements as to treatment and the brochure. Dr. Shannon knew that her statements, if used in the newscast, would refer to the plaintiff. Additionally, I believe the brochure, if considered, would refer to and identify the plaintiff. Thus, I believe the issue became one of fact, and Dr. Shannon should not have been dismissed with prejudice from the cause on this basis. See *Beresky*, 64 Ill. App. 3d at 851.

I interpret the majority's opinion to hold that, even if Dr. Shannon had used the plaintiff's name in her statements, those statements would not have been capable of being understood to refer to the plaintiff if the plaintiff's name had been redacted (bleeped out) from those statements. I am not willing to go that far.

I concur with the remaining portion of the majority opinion.