776 N.E.2d 693 (2002)
333 Ill. App.3d 755
267 Ill.Dec. 321
Peter SCHIVARELLI and H.D. Stands, L.L.C., a/k/a Demon Dogs, Plaintiffs-Appellants and Cross-Appellees,
v.
CBS, INC., WBBM Television, and Pamela Zekman, Defendants-Appellees and Cross-Appellants.
No. 1-01-3969.
Appellate Court of Illinois, First District, Sixth Division.
August 16, 2002.
*695 Alan J. Mandel, Ltd., Chicago (Alan J. Mandel, of counsel), for Appellant.
Garnder Carton & Douglas, Chicago (Michael J. Hayes, Myriam Pierre Warren, of counsel), CBA Broadcasting, Inc., New York City (Susanna M. Lowy, Anthony M. Bongiorno, of counsel), and Levine Sullivan and Koch, L.L.P., Washington, D.C. (Lee Levine, Jay Ward Brown, Thomas Curley, of counsel), for Appellee.
Justice SHEILA M. O'BRIEN delivered the opinion of the court:
Plaintiffs, Peter Schivarelli and H.D. Stands, L.L.C., also known as Demon Dogs, appeal the order of the circuit court dismissing their complaint against defendants, CBS Broadcasting, Inc.[1], WBBM Television, and Pamela Zekman, for defamation, false light invasion of privacy, commercial misappropriation, and commercial disparagement. Plaintiffs also appeal the order of the circuit court denying the City of Chicago's motion to quash a subpoena directing its inspector general to produce an investigative report concerning Mr. Schivarelli. Defendants cross-appeal the order of the circuit court requiring the redaction of all recommendations and conclusions from the inspector general's report prior to its production. We affirm the order dismissing plaintiffs' amended complaint; we dismiss the appeal and cross-appeal from the order requiring the production of the inspector general's report.
This case arises from a 30-second promotional announcement broadcast in 1999 on television station WBBM-TV, channel 2 in Chicago, which is owned and operated by CBS Broadcasting, Inc. The promotional announcement consists of nine segments. *696 The first segment consists of music over an introductory on-screen graphic, "PAM ZEKMAN INVESTIGATES." The second segment shows Ms. Zekman, an investigative reporter for WBBM, seated in a studio, saying, "It's an outlet for people, we ..." An accompanying on-screen graphic states, "INVESTIGATIONS that get results." The third segment shows Ms. Zekman interviewing an unidentified man. The interview is conducted at an unidentified, outdoor location in front of a white wall with blue paneling and a picnic table. The interview consists, in its entirety, of Ms. Zekman saying to the man, "Let's sum this up for a second, the evidence seems to indicate that you're cheating the city." The fourth segment shows Ms. Zekman seated in the studio, saying, "A force for people that have been frustrated by wrongdoing that they see." An accompanying on-screen graphic states, "uncovering CORRUPTION." The fifth segment shows Ms. Zekman in an office asking a woman, "Would you want to eat in that restaurant with food that has been out for five...." The sixth segment again shows Ms. Zekman seated in the studio, saying, "To get things corrected by the agencies that are supposed to correct them." An accompanying on-screen graphic states, "CHANGING the system." The seventh segment shows Ms. Zekman walking outdoors and asking another unidentified man, "You're not registered under the Act. Why haven't you registered?" The eighth segment shows Ms. Zekman in the studio, saying, "Investigative reporting is a positive thing." An accompanying on-screen graphic states, "exposing ABUSES." The ninth segment features a male voice stating, "Pam Zekman investigates. Only on News 2 Chicago. Take another look."
Mr. Schivarelli alleges that he is the man in the third segment and that he is the majority owner of H.D. Stands, which operates a Fullerton Avenue hot dog stand known as "Demon Dogs." This is uncontroverted.
Plaintiffs filed an amended complaint against defendants. Mr. Schivarelli alleged causes of action for defamation per se, false light invasion of privacy, and commercial misappropriation. H.D. Stands alleged causes of action for defamation per se, defamation per quod, false light invasion of privacy, and commercial disparagement. Defendants moved to dismiss the complaint pursuant to sections 2-615 and 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 1992)). The trial court granted defendants' motion and dismissed the amended complaint in its entirety pursuant to section 2-615. Plaintiffs filed this timely appeal.
First, we address the dismissal of Mr. Schivarelli's claim for defamation per se. Dismissal of a cause of action pursuant to section 2-615 is appropriate only when it clearly appears that no set of facts could ever be proved under the pleadings that would entitle the plaintiff to recover. Mt. Zion State Bank & Trust v. Consolidated Communications, Inc., 169 Ill.2d 110, 115, 214 Ill.Dec. 156, 660 N.E.2d 863 (1995). Whether a complaint states a valid cause of action is a question of law, and our review of a dismissal pursuant to a section 2-615 motion is de novo. Majumdar v. Lurie, 274 Ill.App.3d 267, 268, 210 Ill.Dec. 720, 653 N.E.2d 915, (1995).
A statement is defamatory if it impeaches a person's reputation and thereby lowers that person in the estimation of the community or deters third parties from associating with that person. Kolegas v. Heftel Broadcasting Corp., 154 Ill.2d 1, 10, 180 Ill.Dec. 307, 607 N.E.2d 201 (1992). Defamatory statements may be actionable per se or actionable per quod. *697 Kolegas, 154 Ill.2d at 10, 180 Ill.Dec. 307, 607 N.E.2d 201. A statement is defamatory per se if it is so obviously and naturally harmful to the person to whom it refers that injury to his reputation may be presumed. Kolegas, 154 Ill.2d at 10, 180 Ill. Dec. 307, 607 N.E.2d 201. Illinois law recognizes five categories of statements that are considered defamatory per se: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) those imputing adultery or fornication. Van Home v. Muller, 185 Ill.2d 299, 307, 235 Ill.Dec. 715, 705 N.E.2d 898 (1998).
Statements are defamatory per quod under two circumstances: (1) where the defamatory character of the statement is not apparent on its face and resort to extrinsic circumstances is necessary to demonstrate its injurious meaning; and (2) where the statement is defamatory on its face, but does not fall within one of the limited categories of statements that are actionable per se. Bryson v. News America Publications, Inc., 174 Ill.2d 77, 103, 220 Ill.Dec. 195, 672 N.E.2d 1207 (1996). Unlike a defamation per se action, plaintiff must plead and prove special damages to recover for defamation per quod. Bryson, 174 Ill.2d at 103, 220 Ill.Dec. 195, 672 N.E.2d 1207.
Mr. Schivarelli argued that Ms. Zekman's statement to him, "Let's sum this up for a second, the evidence seems to indicate that you're cheating the city," constituted defamation per se, as it imputed: (1) the commission of a criminal offense; (2) a want of integrity in the discharge of duties of office or employment; and (3) a lack of ability in his profession or business. Mr. Schivarelli also argued that Ms. Zekman's statement must be considered in the context of the entire 30 second promotional announcement, which trumpets Ms. Zekman's ability to dig up hidden corruption, abuse and unethical or illegal conduct. The trial court dismissed Mr. Schivarelli's claim of defamation per se, ruling that Ms. Zekman's statement constituted a constitutionally protected opinion.
Prior to 1990, the Illinois Supreme Court perceived a fundamental distinction between statements of fact and statements of opinion for first amendment purposes. The court held that statements of opinion were protected by the first amendment and not actionable in a defamation action. Owen v. Carr, 113 Ill.2d 273, 100 Ill.Dec. 783, 497 N.E.2d 1145 (1986); Mittelman v. Witous, 135 Ill.2d 220, 142 Ill.Dec. 232, 552 N.E.2d 973 (1989). The court's holding was grounded primarily on dictum contained in Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40, 94 S.Ct. 2997, 3006-07, 41 L.Ed.2d 789, 805 (1974): "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."
However, in Milkovich v. Lorain Journal Co., 497 U.S. 1, 19, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1, 18 (1990), the United States Supreme Court reexamined the law of defamation within the context of the first amendment and held that a false assertion of fact can be libelous even though couched in terms of an opinion. Milkovich, 497 U.S. at 18-19, 110 S.Ct. at 2705-06, 111 L.Ed.2d at 17-18 (simply couching the statement "Jones is a liar" in terms of opinion"In my opinion Jones is a liar"does not dispel the factual implications contained in the statement). Under Milkovich, a statement of opinion is *698 constitutionally protected under the first amendment only if it cannot be reasonably interpreted as stating actual facts. Milkovich, 497 U.S. at 20, 110 S.Ct. at 2706, 111 L.Ed.2d at 19. Whether a statement qualifies as constitutionally protected speech under the first amendment is a matter of law for the court to decide. Dubinsky v. United Airlines Master Executive Council, 303 Ill.App.3d 317, 324, 236 Ill.Dec. 855, 708 N.E.2d 441 (1999).
The Illinois Supreme Court has adopted the Milkovich test. See, e.g., Kolegas, 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201; Bryson, 174 Ill.2d 77, 220 Ill.Dec. 195, 672 N.E.2d 1207. The emphasis in the Milkovich test is on whether the allegedly defamatory statement contains an objectively verifiable assertion. Wynne v. Loyola University, 318 Ill.App.3d 443, 452, 251 Ill.Dec. 782, 741 N.E.2d 669 (2000).
Mr. Schivarelli argues that Ms. Zekman's statement to him, "Let's sum this up for a second, the evidence seems to indicate that you're cheating the city," is objectively verifiable and, thus, actionable. Dubinsky and Hopewell v. Vitullo, 299 Ill.App.3d 513, 233 Ill.Dec. 456, 701 N.E.2d 99 (1998), are on point. In Dubinsky, plaintiffs brought an action for defamation and false light invasion of privacy arising from several statements made by defendants (members of a commercial pilots' labor union). Dubinsky, 303 Ill.App.3d at 321-22, 236 Ill.Dec. 855, 708 N.E.2d 441. Plaintiffs alleged that defendants falsely accused them of criminal conduct related to the employee purchase of United Airlines under an employee stock ownership plan. Dubinsky, 303 Ill.App.3d at 321, 236 Ill.Dec. 855, 708 N.E.2d 441. Specifically, plaintiff Dubinsky alleged that defendant Richards defamed him by calling him a crook in front of about 30 or 40 United Airlines pilots and their wives. Dubinsky, 303 Ill.App.3d at 329, 236 Ill.Dec. 855, 708 N.E.2d 441. The trial court upheld Dubinsky's defamation count, ruling that Richards' statement accused Dubinsky of criminal conduct. Dubinsky, 303 Ill.App.3d at 329, 236 Ill.Dec. 855, 708 N.E.2d 441. The appellate court reversed, holding:
"Richards' statement that Dubinsky was a `crook' was not actionable because it was not made in any specific factual context. One cannot rely on an assumption that those who heard the statement were completely apprised of all the developments in the * * * controversy so as to create a definitive factual context for the use of the word `crook.' Based on the totality of the circumstances, we conclude that this general statement, in the absence of factual context, is a statement of opinion, not objectively verifiable and devoid of factual content." Dubinsky, 303 Ill.App.3d at 329-30, 236 Ill.Dec. 855, 708 N.E.2d 441.
In Hopewell, the plaintiff was hired in February 1992 and paid $7,000 per month to be treasurer and chief financial officer of the Carol Moseley Braun for U.S. Senate Committee (the Committee). Hopewell, 299 Ill.App.3d at 515, 233 Ill.Dec. 456, 701 N.E.2d 99. In March 1996, Senator Braun (the defendant) informed plaintiff that, from that point on, he would be working on a volunteer basis. Hopewell, 299 Ill.App.3d at 515, 233 Ill.Dec. 456, 701 N.E.2d 99. Plaintiff filed a lawsuit against the Senator and the Committee for breach of contract, retaliatory discharge, and violation of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 et seq. (West 1996)). Hopewell, 299 Ill.App.3d at 515, 233 Ill.Dec. 456, 701 N.E.2d 99.
Upon filing the complaint, plaintiff commented to the press regarding the Senator's campaign finances. Hopewell, 299 Ill.App.3d at 516, 233 Ill.Dec. 456, 701 N.E.2d 99. In response, defendant told *699 the Chicago Tribune that plaintiff "was fired because of incompetence." Hopewell, 299 Ill.App.3d at 516, 233 Ill.Dec. 456, 701 N.E.2d 99. Plaintiff then filed a lawsuit against defendant for defamation. Hopewell, 299 Ill.App.3d at 516, 233 Ill.Dec. 456, 701 N.E.2d 99.
The trial court dismissed plaintiff's defamation action. Hopewell, 299 Ill.App.3d at 515, 233 Ill.Dec. 456, 701 N.E.2d 99. The appellate court affirmed, holding that the phrase "fired because of incompetence" was a nonactionable opinion because it was not made in any specific factual context and thus lacked a precise and readily understood meaning. Hopewell, 299 Ill. App.3d at 519-20, 233 Ill.Dec. 456, 701 N.E.2d 99. The court further noted that readers easily could conclude defendant's statement was an effort at "posturing" before plaintiff's ensuing legal battle with the Senator. Hopewell, 299 Ill.App.3d at 520, 233 Ill.Dec. 456, 701 N.E.2d 99. Finally, the court held that defendant's statement was "too broad, conclusory, and subjective to be objectively verifiable." Hopewell, 299 Ill.App.3d at 520, 233 Ill.Dec. 456, 701 N.E.2d 99.
Similarly, here, Ms. Zekman's statement to Mr. Schivarelli, "Let's sum this up for a second, the evidence seems to indicate that you're cheating the city," was not made in any specific factual context. Ms. Zekman did not explain the evidence that she was referring to, nor did she state why she thought Mr. Schivarelli was cheating the city, how he was cheating the city, or even what she meant by the term "cheating." See El Paso Times, Inc. v. Kerr, 706 S.W.2d 797, 798-99 (Tex.App.Ct.1986)("Cheating has no unique definition. It may, in some instances, imply criminal acts; it also serves to accuse one of unfair dealings. It is not a word which has a precise meaning. It means different things to different people at different times and in different situations").
Nor did the remainder of the 30-second promotional announcement provide any context for Ms. Zekman's statement to Mr. Schivarelli; rather, the remainder of the promotional announcement featured Ms. Zekman interviewing other persons and making general comments about her job, while on-screen graphics touted her performance as an investigative reporter. In the absence of any factual context, Ms. Zekman's statement to Mr. Schivarelli was a nonactionable opinion, as it was too broad, conclusory, and subjective to be objectively verifiable.
Mr. Schivarelli argues that Kolegas v. Heftel Broadcasting Corp., 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201(1992), and Kumaran v. Brotman, 247 Ill.App.3d 216, 186 Ill.Dec. 952, 617 N.E.2d 191 (1993), compel a different result. In Kolegas, the plaintiff brought a defamation per se action against two radio disc-jockeys and their broadcasting corporation. The plaintiff was promoting and producing classic cartoon festivals in order to raise money and increase the public awareness of neurofibromatosis, also known as Elephant Man's disease. Kolegas, 154 Ill.2d at 6, 180 Ill.Dec. 307, 607 N.E.2d 201. The plaintiff called the radio station at one point, introduced himself as Anthony Kolegas, and discussed the festival on the air. Kolegas, 154 Ill.2d at 6-7, 180 Ill.Dec. 307, 607 N.E.2d 201. Suddenly, the radio personalities hung up on him and stated that Kolegas was "not for real," that he was just "scamming" them, and that there was "no such show as the classic cartoon festival." Kolegas, 154 Ill.2d at 7, 180 Ill.Dec. 307, 607 N.E.2d 201. Our supreme court affirmed the appellate court and held that the word "scamming" could be found to be defamatory per se because it imputed a lack of integrity in the discharge of employment *700 duties and prejudiced the plaintiff in his business by implying that he was lying and trying to deceive the defendants and the public at large. Kolegas, 154 Ill.2d at 12, 180 Ill.Dec. 307, 607 N.E.2d 201.
In Kumaran, the plaintiff was a school teacher, and the defendant's newspaper article accused him of "working a scam" by being engaged in the full-time occupation of filing "unwarranted suits for settlement money." Kumaran, 247 Ill.App.3d at 219-20, 225-27, 186 Ill.Dec. 952, 617 N.E.2d 191. The appellate court held that these remarks could be found to be defamatory per se because they essentially accused the teacher of being a "swindler" and therefore prejudiced him in his profession as a schoolteacher and presented him as someone who would not be an acceptable role model for young students. Kumaran, 247 Ill.App.3d at 226-27, 186 Ill.Dec. 952, 617 N.E.2d 191.
Mr. Schivarelli argues that Ms. Zekman's statement to him, that "the evidence seems to indicate that you're cheating the city," is similar to the "scamming" statements in Kolegas and Kumaran. We disagree. The defendants in Kolegas and Kumaran did not simply state that the plaintiffs were engaged in a "scam"; they also explained the factual basis behind their statements, i.e., that Kolegas was deceiving the public regarding a cartoon festival, and that Kumaran was filing unwarranted lawsuits for the settlement money. By contrast, Ms. Zekman gave no similar factual context for her statement that Mr. Schivarelli was "cheating" the city; accordingly, Kolegas and Kumaran are inapposite.
Mr. Schivarelli also cites Moriarty v. Greene, 315 Ill.App.3d 225, 247 Ill.Dec. 675, 732 N.E.2d 730 (2000). In Moriarty, defendant Bob Greene, a columnist for the Chicago Tribune, wrote several columns regarding a particular child custody dispute that was resolved in a 1995 opinion of our supreme court granting custody to the biological father "forthwith." The child had been in the care and custody of adoptive parents for four years, until the supreme court granted custody to the biological father in January 1995. Plaintiff, a licensed clinical psychologist, coordinated a team of mental health professionals assembled at the father's request to implement the supreme court order awarding custody. Moriarty, 315 Ill.App.3d at 228, 247 Ill.Dec. 675, 732 N.E.2d 730.
One of Greene's columns stated that plaintiff has "readily admitted that she sees her job as doing whatever the natural parents instruct her to do." Moriarty, 315 Ill.App.3d at 228, 247 Ill.Dec. 675, 732 N.E.2d 730. The appellate court found that this statement was defamatory per se, as it imputed that plaintiff lacked the ability and integrity to discharge the duties of her employment. Moriarty, 315 Ill.App.3d at 231-33, 247 Ill.Dec. 675, 732 N.E.2d 730. The appellate court specifically noted that the statement was a "factual assertion, capable of being proven true or false." Moriarty, 315 Ill.App.3d at 233, 247 Ill. Dec. 675, 732 N.E.2d 730.
Unlike Moriarty, Ms. Zekman's statement was not objectively verifiable (see our discussion above); accordingly, Moriarty is inapposite.
Next, we address the dismissal of Mr. Schivarelli's claim for false light invasion of privacy. The false light tort protects a person's interest in being free from false publicity. Lovgren v. Citizens First National Bank of Princeton, 126 Ill.2d 411, 418, 128 Ill.Dec. 542, 534 N.E.2d 987 (1989). To state a claim for a false light invasion of privacy, a plaintiff must allege the defendant's actions placed the plaintiff in a false light before the public, that the false light would be highly offensive *701 to the reasonable person, and that the defendant acted with actual malice. Lovgren, 126 Ill.2d at 419-20, 128 Ill.Dec. 542, 534 N.E.2d 987. A motion to dismiss for failure to state a false light claim will not be granted unless no set of facts can be proven to entitle the plaintiff to relief. Lovgren, 126 Ill.2d at 419, 128 Ill.Dec. 542, 534 N.E.2d 987.
As in defamation actions, statements that are expressions of opinion devoid of any factual content are not actionable as false light claims. Moriarty, 315 Ill.App.3d at 237, 247 Ill.Dec. 675, 732 N.E.2d 730; Dubinsky, 303 Ill.App.3d at 332, 236 Ill.Dec. 855, 708 N.E.2d 441. As discussed, Ms. Zekman's statement was an expression of opinion devoid of any factual content; accordingly, we affirm the trial court's order dismissing Mr. Schivarelli's false light claim.
Next, we address the dismissal of Mr. Schivarelli's claim for commercial misappropriation pursuant to the Right of Publicity Act (Act) (765 ILCS 1075/1 et seq. (West 1998)). Section 30 of the Act provides, "A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent * * *." 765 ILCS 1075/30(a) (West 1998). However, section 35 provides, "This Act does not apply to * * * use of an individual's identity for noncommercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign; * * * [or] promotional materials, advertisements, or commercial announcements for [such] a use." (Emphasis added.) 765 ILCS 1075/35 (b)(2),(b)(4) (West 1998).
Mr. Schivarelli claims that defendants misappropriated his "likeness" for commercial purposes in violation of section 30 of the Act. We disagree. The promotional announcement featuring Mr. Schivarelli was broadcast, not for commercial purposes, but for the noncommercial purpose of promoting Ms. Zekman's news reports on WBBM channel 2. As such, Mr. Schivarelli's claim for commercial misappropriation is precluded by section 35 of the Act. Accordingly, we affirm the dismissal of Mr. Schivarelli's commercial misappropriation claim.
Mr. Schivarelli argues that Ainsworth v. Century Supply Co., 295 Ill.App.3d 644, 230 Ill.Dec. 381, 693 N.E.2d 510 (1998), compels a different result. In Ainsworth, the appellate court held that the plaintiff stated a cause of action for commercial misappropriation where defendant made commercial use of plaintiff's likeness by including it in an advertisement that defendant had been commissioned to create. Ainsworth, 295 Ill.App.3d at 648-49, 230 Ill.Dec. 381, 693 N.E.2d 510. Ainsworth is inapposite because, as discussed, Mr. Schivarelli's "likeness" or identity was used, not for commercial purposes, but for the noncommercial purpose of promoting Ms. Zekman's news reports on WBBM, channel 2.
Next, we address the dismissal of H.D. Stands' (a/k/a Demon Dogs') claims of defamation per se, defamation per quod, and false light invasion of privacy. H.D. Stands alleged that it was defamed and that its privacy was invaded by the promotional announcement featuring Ms. Zekman's interview of Mr. Schivarelli, in which she accused him of "cheating" the city, followed by the depiction of Ms. Zekman asking another woman about spoiled food.
An essential element of a defamation per se or defamation per quod claim is that the challenged statement be "of and concerning the plaintiff (Aroonsakul v. Shannon, 279 Ill.App.3d 345, 350, 216 Ill.Dec. 166, 664 N.E.2d 1094 (1996)), i.e., that the alleged defamatory statement be identifiably about the plaintiff. The *702 requirement in a defamation case that the statement be "of and concerning the plaintiff" is equally applicable to a false light claim. Aroonsakul, 279 Ill.App.3d at 350, 216 Ill.Dec. 166, 664 N.E.2d 1094.
Here, the allegedly defamatory statements are not "of and concerning" H.D. Stands or Demon Dogs. Neither H.D. Stands nor Demon Dogs is mentioned anywhere in the audio portion of the promotional announcement. Further, the promotional announcement contains nothing to suggest that the outdoor location in which Ms. Zekman interviewed Mr. Schivarelli has anything to do with H.D. Stands or Demon Dogs, nor is there any link between H.D. Stands/Demon Dogs and the excerpt concerning unsanitary conditions at unnamed restaurants. Accordingly, we affirm the dismissal of H.D. Stands'/Demon Dogs' claims for defamation per se, defamation per quod, and false light invasion of privacy.
H.D. Stands/Demon Dogs argues that Desnick v. American Broadcasting Cos., 44 F.3d 1345 (7th Cir.1995), and Boese v. Paramount Pictures Corp., 952 F.Supp. 550 (N.D.Ill.1996), compel a different result. In Desnick, ABC broadcast a report about allegedly wrongful practices at an eye clinic, which included footage of two of the clinic's doctors. Desnick, 44 F.3d at 1348. Part of the report concerned the clinic's auto-refractor (or glare machine), which tests whether the patient suffers from any glare problems. Desnick, 44 F.3d at 1348. The report alleged that the clinic tampered with the glare machine in order to deceive patients into thinking that they needed cataract surgery. Desnick, 44 F.3d at 1348-49.
The reference to tampering followed footage of the two doctors themselves, which depicted them asking patients about glare. Desnick, 44 F.3d at 1349. The court held that the two doctors had been sufficiently linked to the allegedly defamatory statement (about tampering with the glare machine) such that the statement reasonably could be understood to be of and concerning them. Desnick, 44 F.3d at 1349-50.
In Boese, the television show "Hard Copy" broadcast a program containing footage of plaintiff testifying against defendant at trial; later in the program, defendant states that "everybody" involved in the trial had "lied." Boese, 952 F.Supp. at 552. Plaintiff brought a defamation action against defendant. The court held that the defendant's statement (that "everybody" involved in the trial had lied) reasonably could be understood to be of and concerning plaintiff, who had been depicted as testifying at the trial. Boese, 952 F.Supp. at 555.
Unlike the plaintiffs in Desnick and Boese, the promotional announcement at issue here does not link H.D. Stands/Demon Dogs or any aspect of its food handling with the allegedly defamatory statements. Accordingly, Desnick and Boese are inapposite.
Next, we address the dismissal of H.D. Stands'/Demon Dogs' claim for commercial disparagement. Currently, it is disputed as to whether a cause of action for commercial disparagement remains viable in Illinois. See Barry Harlem Corp. v. Kraff, 273 Ill.App.3d 388, 396, 210 Ill. Dec. 101, 652 N.E.2d 1077 (1995), citing Appraisers Coalition v. Appraisal Institute, 845 F.Supp. 592, 610 (N.D.Ill.1994). Even assuming, arguendo, that such a cause of action exists, H.D. Stands/Demon Dogs has failed to state such a claim. To state a cause of action, H.D. Stands/Demon Dogs must show that defendants made false and demeaning statements regarding the quality of H.D. Stands'/Demon Dogs' goods and services. Barry Harlem *703 Corp., 273 Ill.App.3d at 396, 210 Ill.Dec. 101, 652 N.E.2d 1077. As discussed, the statements at issue do not relate to H.D. Stands/Demon Dogs or to the quality of its goods and services; accordingly, we affirm the dismissal of H.D. Stands'/Demon Dogs' commercial disparagement claim.
Finally, we address an order of the trial court denying the City of Chicago's motion to quash a subpoena directing its inspector general to produce an investigative report about Mr. Schivarelli.
During discovery in this case, defendants served a subpoena on the City of Chicago (City), seeking a report relating to a 1997 investigation of Mr. Schivarelli by the City's inspector general. Defendants sought the inspector general's investigative report because the report supposedly demonstrated the truth of Ms. Zekman's allegedly defamatory statements about Mr. Schivarelli. The City moved to quash the subpoena. On August 16, 2001, the trial court denied the motion to quash and ordered the City to produce a redacted portion of the investigative report. Plaintiffs appeal the August 16, 2001, order, arguing that the trial court erred in denying the City's motion to quash; defendants cross-appeal the August 16, 2001, order, arguing that the trial court erred in requiring the City to redact certain portions of the inspector general's report.
The trial court ordered the City to produce the investigative report because the court determined that the report potentially contained "factual information * * * pertinent" to plaintiffs' defamation, false light, commercial misappropriation, and commercial disparagement claims. Since we are affirming the trial court's dismissal of plaintiffs' defamation, false light, commercial misappropriation, and commercial disparagement claims, any judgment on the issue of the inspector general's report would have no practical legal effect on any existing controversy. Consequently, plaintiffs' appeal and defendants' cross-appeal from the trial court's August 16, 2001, order are dismissed as moot. See Mount Carmel High School v. Illinois High School Ass'n, 279 Ill.App.3d 122, 124, 215 Ill.Dec. 855, 664 N.E.2d 252 (1996) (A case is moot when it seeks a judgment upon some matter that, when rendered, has no practical legal effect on an existing controversy).
For the foregoing reasons, we affirm the order of the circuit court dismissing plaintiffs' amended complaint; we dismiss the plaintiffs' appeal and the defendants' cross-appeal from the circuit court's August 16, 2001, order requiring the City to produce the inspector general's report.
Affirmed in part; dismissed in part.
GALLAGHER, P.J., and BUCKLEY, J., concur.
NOTES
[1] CBS Broadcasting, Inc., is incorrectly identified in the complaint as "CBS Inc."